**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| APRIL DAVIS, *et al.*,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>SHELLEY ZIMMERMAN., *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 17-cv-01230-BAS-NLS<br><br>**ORDER GRANTING DEFENDANTS WILLIAM GORE AND COUNTY OF SAN DIEGO'S MOTION TO DISMISS**<br><br>**[ECF No. 31]** |

Pending before the Court is a motion to dismiss the Second Amended Complaint ("SAC") filed by Defendants William Gore ("Sheriff Gore") and the County of San Diego ("the County") (collectively, the "Defendants"[1]) as to the claims asserted against them. (ECF No. 31-1.) Plaintiffs[2] have opposed (ECF No. 32) and

---

[1] The SAC also names as Defendants: San Diego Police Chief Shelley Zimmerman ("Chief Zimmerman"), the City of San Diego (the "City"), 31 San Diego Police Department ("SDPD") police officers and sergeants, some 299 Doe San Diego Police officers, and some 169 Doe San Diego Sheriff's Deputies. (*See* ECF No. 25 ("SAC").) Neither Chief Zimmerman, the City, nor the served SDPD officers have moved to dismiss.

[2] Plaintiffs are Victor Orozco, Jairo Cervantes Ramirez, Jose Cortes, Marco Amaral, Madison Goodman, Brandon Steinberg, and Nancy Sanchez. (SAC ¶¶15,

Defendants have replied (ECF No. 33). For the reasons herein, the Court grants Defendants' motion to dismiss.

## I. BACKGROUND

### A. Factual Background

On May 27, 2016, then presidential candidate Donald Trump held a political rally at the San Diego Convention Center, sparking large, day-long protests. (SAC ¶64.) Scuffles between anti-Trump and pro-Trump demonstrators occurred—"a few plastic water bottles were thrown back and forth, and people yelled at each other." (*Id*. ¶65.)

Allegedly, "[a]t some point," Chief Zimmerman decided to declare the entire assembly unlawful under California Penal Code Section 409. (*Id*. ¶66.) Thereafter, "[h]undreds of police in riot gear [marched] in military formation" from the Convention Center over the bridge into Barrio Logan, "arresting anyone in their path who d[id] not move quickly enough." (*Id*. ¶¶2, 67.) The officers "fir[ed] chemical weapons at peaceful demonstrators" and "[a] San Diego Sheriff's Department helicopter also flew overhead ordering the demonstrators to disperse." (*Id*. ¶2.) Plaintiffs allege that they were arrested half a mile from the assembly "when only 30–40 individuals were peacefully demonstrating, and no demonstrator was breaking any law." (*Id*. ¶3.)

Sheriff Gore was allegedly "complicit in this unconstitutional action to shut down all protests, as the Sheriff's Department cooperated in making the arrests, and set up an outdoor processing department and booking station complete with large buses for holding anyone arrested, which was pre-planned and set up for this purpose." (*Id*. ¶68.) Plaintiffs allege that before the rally, the Sheriff's Department set up confinement centers to "imprison Plaintiffs after their false arrest at the hands

---

17–19, 21–23.) Three plaintiffs were dismissed at the joint request of the parties. (ECF No. 36.)

of SDPD" and "unlawfully imprisoned Plaintiffs at the pre-planned confinement centers for hours." (*Id.* ¶4.) Plaintiffs allege that some 49 Doe San Diego Sheriff's Deputies "actively detained Plaintiffs," including "SDSO Mobile Booking Staff, SDSO Prisoner Transportation Staff, and SDSO Command." (*Id.* ¶61.) Another 99 Doe San Diego Sheriff's Deputies "were present and failed to act to protect Plaintiffs' constitutional rights" when they were falsely arrested by SDPD officers and/or actively detained by Sheriff's Deputies. (*Id.* ¶62.) Another 19 Doe Sheriff's Deputies "approved, directed and/or ratified the conduct" of Sheriff's Deputies who allegedly detained the Plaintiffs or failed to act. (*Id.* ¶63.)

Plaintiffs allege that all of this conduct reflects a "deliberate, orchestrated, and pre-planned suspension of the First Amendment in downtown San Diego and Barrio Logan by the San Diego Police Department and San Diego Sheriff's Department." (*Id.* ¶¶1–2.) Plaintiffs further allege that Defendants have previously "arbitrarily declare[d]" an assembly to be unlawful "to shut down the dissent during the 2011 Occupy protests." (*Id.* ¶6.)

### B. Procedural Background

Ten plaintiffs initially filed suit on June 16, 2017 against Chief Zimmerman (in her official capacity), Sheriff Gore (in his official capacity), the City, the County, and numerous unidentified Doe officers. (ECF No. 1.) The Complaint alleged causes of action under 42 U.S.C. §1983 (solely against the City of San Diego); the California Civil Rights Act (the "Bane Act"), California Civil Code §§51 *et seq.*; false imprisonment; assault and battery; negligence; and requested declaratory and injunctive relief. (*Id.*) A First Amended Complaint ("FAC") was filed on August 10, 2017, which, *inter alia*, amended the Section 1983 claim to include Sheriff Gore and the County. (ECF No. 3 ¶¶39–41.) Sheriff Gore and the County moved to dismiss the FAC. (ECF No. 6). After full briefing on the motion (ECF Nos. 13, 14), the Court permitted Plaintiffs to file the SAC to name additional defendant officers and denied the pending motion to dismiss without prejudice. (ECF No. 24.) Plaintiffs

filed the SAC on January 19, 2018, naming some thirty SDPD officers as defendants. (ECF No. 25.) The Sheriff and the County have moved once more to dismiss the claims against them. (ECF No. 33-1.) The Court now turns to the merits of that motion.

## II. LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true the allegations of the complaint. *Erickson v. Pardus*, 551 U.S. 89 (2007). A complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). A pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id*.

## III. DISCUSSION

### A. Section 1983 Claims

Sheriff Gore and the County seek to dismiss all Section 1983 claims asserted against them. The Court agrees that, as pleaded, these claims are subject to dismissal.

#### 1. *Monell* Claim Against the County

In relevant part, the SAC expressly asserts a Section 1983 claim against the County under *Monell* based on Sheriff Gore's conduct. (SAC ¶¶70–71, 73.) The single allegation in Plaintiffs' *Monell* claim implicating the County is that Sheriff Gore "was aware of all facts and circumstances concerning the actions of the [SDPD]

and ordered his Sheriff's Deputies to cooperate with San Diego Police in improperly and illegally abrogating the First and Fourth Amendment rights of the protesters." (*Id.* ¶73.) Plaintiffs allege this "was done with the final policymaking authority of Sheriff William Gore designed to violate Plaintiffs' constitutional rights." (*Id.*) The County moves to dismiss on the ground that the claim lacks sufficient, non-conclusory allegations to support municipal liability. (ECF No. 31-1 at 3.) Plaintiffs' opposition to the motion to dismiss does not address the sufficiency of their Section 1983 *Monell* claims. The Court agrees that Plaintiffs' *Monell* claims against the County are insufficiently pleaded.

A municipality like the County can be sued under Section 1983 where a municipal policy or custom has caused an alleged violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). However, a municipality cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under §1983 on a *respondeat superior* theory." *Id.* at 691 (emphasis original); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*"). In a *Monell* claim, there are three ways to show a municipal policy or custom: (1) by showing "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *See Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (quoting *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *Lopez v. Cty. of L.A.*, No. CV 15-01745 MMM (MANx), 2015 WL 3913263, at *5–6 (C.D. Cal. June 25, 2015).

There is some dispute about what Plaintiffs are required to plead in order to

withstand dismissal of their claim. Relying on *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014), Plaintiffs argue that there is no heightened pleading standard for Section 1983 claims. (ECF No. 32 at 3–4.) This reliance is misplaced. *Johnson* concerned whether a plaintiff is required to expressly invoke Section 1983 in order to state a claim under that section. 135 S. Ct. at 347 ("no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke §1983 expressly in order to state a claim"). As *Johnson* itself recognized, the factual sufficiency of the allegations is a distinct issue pertaining to a claim's substantive plausibility. *Id*. (citing *Twombly*, 550 U.S. 544; *Iqbal*, 556 U.S. 662). Here, the County does not move to dismiss on the ground that Plaintiffs failed to expressly invoke Section 1983, but rather the factual sufficiency of Plaintiffs' claims.

To withstand a motion to dismiss, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, conduct, or habits." *Valentine v. City of Crawford*, No. 16-cv-00279-MEJ, 2016 WL 2851661, at *5 (N.D. Cal. May 16, 2016) (quoting *Bedford v. City of Hayward*, No. 3:12-cv-00294-JCS, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012)); *see also AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (determining that *Iqbal*'s pleading requirements apply to *Monell* claims). Accordingly, Plaintiffs' "factual allegations 'must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Save CCSF Coal. v. Lim*, No. 14-cv-05286-SI, 2015 WL 3409260, at *12 (N.D. Cal. May 27, 2015) (quoting *AE*, 666 F.3d at 637). Plaintiffs' allegations fail to meet this standard.

First, the Court finds that the SAC merely recites a key element of a *Monell* cause of action. Although the SAC alleges that Sheriff Gore acted "with final policymaking authority," (SAC ¶73), this allegation is a bare recitation of a legal element of a *Monell* claim. The SAC does not advance any facts showing that Sheriff Gore was such a policymaker for the County. This alone warrants dismissal of

Plaintiffs' *Monell* claim.[3] *See SAVE CCSF Coal.*, 2015 WL 3409260, at *13 (dismissing *Monell* claims against city of San Francisco where Plaintiff failed to allege facts supporting assertion that an official possessed final policy-making authority); *cf. San Diego Branch of NAACP v. Cty. of San Diego*, No. 16-cv-2575-JLS (BGS), 2018 WL 1382807, at *4 (S.D. Cal. Mar. 19, 2018) (complaint specifically alleged that "Sheriff Gore is responsible for ensuring the actions of County law enforcement officials are consistent with the laws and Constitution").

Second, the factual allegations underlying Plaintiffs' *Monell* claim are insufficient. Plaintiffs fail to allege facts supporting their claim that any "cooperation" by the County was for the purpose of abrogating their First and Fourth Amendment rights. Additionally, while the SAC contains allegations regarding conduct undertaken by the Sheriff's Department and Sheriff's Deputies (SAC ¶¶4, 61–63), the SAC contains no factual allegations showing that this conduct is attributable to an alleged municipal policy. A plaintiff asserting a *Monell* claim based on a municipal policy must provide sufficient factual allegations showing that municipal employees acted *pursuant to* a policy, which caused the alleged harm. *See Lopez*, 2015 WL 3913263, at *8. Here, it is simply unclear from the SAC the relationship between the alleged conduct of the Sheriff's Department and Sheriff's Deputies and the alleged order by Sheriff Gore. Accordingly, the Court grants the motion to dismiss the *Monell* claim against the County, with leave to amend.

### 2. Section 1983 Claims Against Sheriff Gore

The SAC alleges two direct Section 1983 claims based on alleged violations

---

[3] Moreover, the Court observes that SAC fails to even allege that the County of San Diego is a "municipality" or that Sheriff Gore is a municipal actor for the purposes of the *Monell* claim. This omission leaves much to question. *Cf. Lopez v. Cty. of L.A.*, No. CV 15-01745 MMM (MANx), 2015 WL 3913263, at *5, n. 20 (C.D. Cal. June 25, 2015) (noting that there was no question the defendants were "municipal actors" because it specifically alleged they were).

of the First and Fourth Amendments.[4] (SAC ¶¶74–113 (Second Cause of Action-First Amendment); *id.* ¶¶114–153 (Third Cause of Action-Fourth Amendment).) Plaintiffs' second cause of action alleges that "[a]ll Defendants conspired to and did violate the First Amendment rights of all Plaintiffs by actively preventing Plaintiffs from peacefully assembling anywhere in the vicinity of the San Diego Convention Center . . . and arresting anyone who did not leave the area entirely." (*Id.* ¶75.) Thus, Plaintiffs' second cause of action fairly invokes both a direct violation of civil rights and a conspiracy claim under Section 1983. However, Plaintiffs' third cause of action alleges only specific acts for certain named Defendant SDPD officers and unnamed Doe Sheriff's Deputies. (*Id.* ¶¶115152.) The Court separately addresses the sufficiency of Plaintiffs' allegations of direct violations and a conspiracy by Sheriff Gore.

### a. Claims for Direct Violations of Civil Rights

Defendants move to dismiss the second and third causes of action against Sheriff Gore on the ground that they are unsupported by sufficient factual allegations. (ECF No. 31-1 at 7–9.) The Court agrees.

To state a claim under section 1983, a plaintiff must allege that: (1) defendant was acting under color of state law at the time the complained of act was committed; and (2) defendant's conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. §1983; *see West v. Atkins*, 487 U.S. 42, 48 (1988). Under Section 1983, supervisory officials are not liable for actions of subordinates through vicarious liability. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Further, "[a] supervisor will rarely be directly and

---

[4] Plaintiffs' *Monell* claim against Sheriff Gore in his official capacity is redundant of Plaintiffs' claim against the County. The Court accordingly dismisses this claim with prejudice as to Sheriff Gore. *See, e.g., Millender v. Cty. of Los Angeles, overruled on other grounds, Messerschmidt v. Millender*, 565 U.S. 535 (2012).

personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury. Yet, this does not prevent a supervisor from being held liable in his individual capacity." *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). A defendant may be liable as a supervisor "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen*, 885 F.2d at 646). Thus, supervisory liability "exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Hansen*, 885 F.2d at 646 (internal quotation marks omitted).

Here, Plaintiffs baldly assert that "there is no denying that Sheriff Gore here was directly involved in planning and overseeing containment of the Donald Trump protests on May 26, 2017 in San Diego." (ECF No. 32 at 6.) But Plaintiffs' second and third causes of action contain no specific allegations regarding Sheriff Gore. Although Plaintiffs allege that they were arrested by SDPD officers and detained by Sheriff's Deputies (SAC ¶¶3–4, 68), they do not allege that Sheriff Gore personally participated in this alleged conduct, nor do they allege facts showing that he personally implemented any policy underlying the allegedly unconstitutional conduct. Rather, Plaintiffs' sole allegation is that Sheriff Gore was "complicit" in the conduct because "the Sheriff's Department cooperated in making the arrests, and set up an outdoor processing department and booking station. . ." (*Id*. ¶68.) This is insufficient to support a direct Section 1983 claim against Sheriff Gore. *See San Diego Branch of NAACP*, 2018 WL 1382807, at *4. Plaintiffs' Section 1983 claims of direct violations of their constitutional rights by Sheriff Gore are therefore subject to dismissal.

### b. Conspiracy Claim

In their opposition, Plaintiffs direct their focus on their conspiracy claim under Section 1983 against Sheriff Gore. They claim that there was a conspiracy between Sheriff Gore and Chief Zimmerman to violate Plaintiffs' constitutional rights. (ECF No. 32 at 7–8.) Plaintiffs' second cause of action alleges that "all Defendants conspired" to violate Plaintiffs' First Amendment rights. (SAC ¶75.) Therefore, it can fairly be read as seeking to allege a conspiracy claim under Section 1983. However, as Defendants implicitly observe (ECF No. 31-1 at 8), the third cause of action does not allege that any Defendants "conspired" to violate Plaintiffs' Fourth Amendment rights. Accordingly, the Court limits its analysis to an alleged conspiracy to violate Plaintiffs' First Amendment rights. Defendants contend that there are no factual allegations anywhere in the SAC which support an alleged conspiracy. The Court agrees.

To establish a conspiracy under Section 1983, a plaintiff must satisfy the following elements: (1) the existence of an express or implied agreement among the defendant officers to deprive him of his constitutional rights; and (2) an actual deprivation of those rights resulting from that agreement. *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir.2010). Here, there are insufficient allegations regarding an alleged conspiracy between Sheriff Gore and Chief Zimmerman. Indeed, the SAC contains no express allegation that Sheriff Gore and Chief Zimmerman conspired together to violate Plaintiffs' First Amendment rights. Even if there were such an allegation, it would need to be supported by sufficient factual allegations. As it stands, the conspiracy claim lacks this support. Alleging that Sheriff Gore was "aware of all facts and circumstances" and "complicit" in alleged unconstitutional conduct does not show a "meeting of the minds" sufficient to support a conspiracy claim under Section 1983. *See Warner v. Cty. of San Diego*, No. 10cv1057 BTM(BLM), 2011 WL 662993, at *23 (S.D. Cal. Feb. 14, 2011). In the absence of factual allegations showing this element of a conspiracy claim, Plaintiffs' allegation that all Defendants

"conspired' is merely a legal conclusion which the Court need not take as true. *See Seung v. Beardomo*, No. CV 15-06663-JAK (DTB), 2017 U.S. Dist. LEXIS 13297, at *18 (C.D. Cal. Jan. 9, 2017), *report and recommendation adopted in relevant part by* 2017 WL 427143 (C.D. Cal. Jan. 31, 2017). Accordingly, the Court grants Defendants' motion to dismiss as to Plaintiffs' second cause of action to the extent it seeks to state a conspiracy claim against Sheriff Gore.

Plaintiffs request leave to amend the SAC to more clearly allege a conspiracy. (ECF No. 32 at 8.) Since the Court has not previously issued an order regarding pleading deficiencies, the Court will grant Plaintiffs leave to amend the SAC to provide sufficient factual allegations to support this claim. To the extent Plaintiffs contend that there was a conspiracy to violate their Fourth Amendment rights in violation of Section 1983, they must allege so in their third cause of action.

### B. The State Law Claims Against Sheriff Gore and the County Are Subject to Dismissal With Prejudice

The SAC alleges that Plaintiffs complied with the California Tort Claims Act ("TCA")'s filing requirements to assert their state law claims. (SAC ¶69.) Plaintiffs allege that their claims were denied and they timely brought suit. (*Id.*) Defendants move to dismiss with prejudice the four state law claims Plaintiffs raise on the ground that Plaintiffs failed to comply with the TCA. Plaintiffs' state law claims are the California Bane Act, false imprisonment, assault and battery, and negligence. (ECF No. 31-1 at 9; SAC ¶¶39–83.) Defendants contend that Plaintiffs failed to file their complaint within six months after receiving a notice of rejection of their claims from the County. The Court agrees that all Plaintiffs' state law claims must be dismissed based on the statute of limitations.

Subject to limited exemptions, the TCA requires that any claim against a government entity for money damages must be filed with the applicable government agency before a lawsuit may be filed in court. CAL. GOV. CODE §905. If the entity provides written notice to the individual regarding the claims, the individual is

required to file suit not later than six months after the date the notice is personally delivered or deposited in the mail. CAL. GOV. CODE §945.6(a)(1). The six-month period is unequivocally "mandatory and must be strictly complied with." *Kenney v. City of San Diego*, No. 13cv248–WQH–DHB, 2013 WL 5346813, at *8 (S.D. Cal. Sept. 20, 2013). ). Failure to comply with the TCA requires dismissal of the claims within its scope. *See Davis v. Kissinger*, No. 2:04-CV-0878-TLN-DAD, 2014 WL 5486525, at *1 (E.D. Cal. Oct. 29, 2014); *J.J. v. Cnty. of San Diego*, 167 Cal. Rptr. 3d 861 (Cal. Ct. App. 2014). Moreover, "[t]he [Tort Claims Act] claims procedures applicable to actions against public entities are the same for actions against public employees." *Arres v. City of Fresno*, CV F 10–1628 LJO SMS, 2011 WL 284971, at *20 (E.D. Cal. Jan.26, 2011). Thus, an individual is required to comply with the TCA's requirements in actions against public employees.

Here, none of Plaintiffs' state law claims are exempt from the TCA's requirements. *See* CAL. CIV. CODE §905 (listing exemptions); *see also Davis*, 2014 WL 5486525, at *3 (determining that TCA applies to Bane Act claims). Plaintiffs were therefore required to bring suit on their state law claims within six-months of any rejection of those claims by the County. Defendants submit evidence regarding Plaintiffs' presentment of their claims to the County and the County's notices of rejection sent to the Plaintiffs. (ECF No. 31-2, Exs. A, B.)[5] The County deposited notices of rejections of Plaintiffs' claims on December 9, 2016. (ECF No. 31-2 Ex. B.) The initial complaint in this action was filed on June 16, 2017, (ECF No. 1), a

---

[5] The Court grants Defendants' request to take judicial notice of these documents. (ECF No. 31-3.) Whether a claim has properly been presented to a public entity under the TCA and the entity's response to any presented claims is subject to judicial notice. *See Clarke v. Upton*, 703 F. Supp. 2d 1037, 1042 (E.D. Cal. 2010) (taking judicial notice of the filing date and content of the Tort Claims and their rejection by the County, on the grounds that the "documents are matters of public record and sets forth facts 'capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned'").

week after the statutory limitation. Plaintiffs do not dispute these facts, which show that their claims are barred. Accordingly, the Court grants with prejudice Sheriff Gore and the County's motion to dismiss the SAC's fourth through seventh causes of action.

### C. Request for Declaratory Relief

Lastly, Defendants seek dismissal of the SAC's eighth cause of action for declaratory relief under California Code of Civil Procedure §1060. (ECF No. 31-1 at 10–14.) When a plaintiff fails to adequately plead any substantive claims, a declaratory relief claim also fails. *See Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10-cv-08185-ODW (FFMx), 2012 U.S. Dist. LEXIS 175743, 2012 WL 6140962, *8 (C.D. Cal. Dec. 11, 2012) ("Declaratory and injunctive relief do not lie where all other claims have been dismissed. Javaheri is therefore not entitled to declaratory or injunctive relief without a viable underlying claim"); *Shaterian v. Wells Fargo Bank, N.A.*, 829 F.Supp.2d 873, 888 (N.D. Cal. Nov. 7, 2011) ("Shaterian's tenth claim seeks a declaration concerning the rights and duties of the parties with respect to his first nine claims. This claim is ultimately a request for relief, and Shaterian is not entitled to such relief absent a viable underlying claim.") (dismissing declaratory relief claim); *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022, 1038 (N.D. Cal. 2010) ("Plaintiff has failed to state any claims, so there is no actual and present controversy"). Because the Court has dismissed all substantive claims against Sheriff Gore and the County in the SAC, there is no viable underlying claims against them. Accordingly, the Court dismisses Plaintiffs' declaratory relief claim without prejudice.

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** the motion to dismiss (ECF No. 31) the claims in the SAC against Defendants Sheriff Gore and the County of San Diego as follows:

    1. Plaintiffs' first through third causes of action under Section 1983 against

Sheriff Gore and the County are **DISMISSED WITHOUT PREJUDICE**.

2. Plaintiffs' state law claims (claim 4 - Bane Act, claim 5 - false imprisonment; claim 6 - assault and battery; claim 7 - negligence) against Sheriff Gore and the County are **DISMISSED WITH PREJUDICE** as barred by the statute of limitations under the California Tort Claims Act.

3. Plaintiffs' claim for declaratory relief (claim 8) against Sheriff Gore and the County is **DISMISSED WITHOUT PREJUDICE**.

4. Plaintiffs are **GRANTED LEAVE TO AMEND** their Section 1983 and declaratory relief claims in the SAC *with respect to Sheriff Gore and the County of San Diego*. Plaintiffs may file any Third Amended Complaint consistent with this Order **no later than May 7, 2018**. **No extensions of this deadline will be granted.** If Plaintiffs file a Third Amended Complaint, they should file a redlined version consistent with Local Rule 15.1 to show any changes between the SAC and the amended pleadings.

If Plaintiffs do not file a Third Amended Complaint, the case will proceed solely as to the City of San Diego and the Defendant SDPD officers, who have filed answers to the pleadings. **The Court advises Plaintiffs that this will be their last opportunity to amend the pleadings as to Sheriff Gore and the County**. Any amended pleadings shown to be deficient on a motion to dismiss will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: April 17, 2018

Hon. Cynthia Bashant
United States District Judge