1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10
11    JAIRO CERVANTES, *et al.*,                CONSOLIDATED ACTIONS:
                                        Plaintiffs,   Case No. 17-cv-1230-BAS-NLS
12                                                    Case No. 18-cv-1062-BAS-NLS
            v.
13                                                    **ORDER GRANTING IN PART
      SAN DIEGO POLICE CHIEF                          AND DENYING IN PART
14    SHELLEY ZIMMERMAN, *et al*.,                    MOTION FOR LEAVE TO
                                                      FILE FOURTH AMENDED
15                                      Defendants.   COMPLAINT**
16                                                    **[ECF No. 71]**
17    _____
18    BRYAN PEASE,
19                                        Plaintiff,
20          v.
21    SAN DIEGO COUNTY SHERIFF
      WILLIAM GORE, *et al.,*
22
                                        Defendants.
23
24          These consolidated cases stem from a May 27, 2016 rally by then presidential
25    candidate Donald Trump at the San Diego Convention Center.  Protests took place
26    and scuffles between anti-Trump and pro-Trump demonstrators occurred.  The City
27    of San Diego ("the City") and the County of San Diego ("the County") allegedly had
28    a plan to and allegedly did violate First Amendment and Fourth Amendment rights

                                        – 1 –

by declaring an unlawful assembly and arresting and detaining the plaintiff protestors. Plaintiffs Jairo Cervantes[1], Madison Goodman, Nancy Sanchez, and Brandon Steinberg are plaintiffs in the *Cervantes* case (the "*Cervantes* Plaintiffs") and Plaintiff Bryan Pease is the plaintiff in the eponymous *Pease* case, collectively the "Plaintiffs."

Plaintiffs move for leave to file a Proposed Fourth Amended Complaint ("PFAC") in *Cervantes*, the designated lead case. (ECF Nos. 71, 77.) The proposed complaint seeks to consolidate the current plaintiffs and defendants as well as the factual allegations and claims in both cases into one consolidated complaint. (ECF No. 71-2 Ex. 9 (redline PFAC).) The City and County Defendants in both cases jointly oppose Plaintiffs' motion. (ECF No. 75.) For the reasons herein, the Court grants in part and denies in part the motion for leave to amend.

## RELEVANT BACKGROUND[2]

On June 16, 2017, eleven Plaintiffs initially filed suit in *Cervantes* against the City, San Diego Police Department ("SDPD") Chief Shelley Zimmerman, the County, San Diego County Sheriff William Gore, and San Diego County Sheriff's Department ("SDSD") Deputy Doe Defendants 1–50. (ECF No. 1.) These Plaintiffs alleged a Section 1983 municipal liability claim pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), solely against the City and Zimmerman and four California state law claims against all Defendants. (*Id.*)

---

[1] Plaintiff Jairo Cervantes Ramirez dropped "Ramirez" from his legal name as a result of becoming a U.S. citizen. (ECF No. 71 at 9.) The Court refers to this case as the *Cervantes* case. To dispel potential confusion, the Court observes that, in the past eleven months, the shorthand name of the *Cervantes* case has changed from the *Davis* case, based on former plaintiff April Davis, to the *Orozco* case, based on former plaintiff Victor Orozco, to the present shorthand name.

[2] All docket references are to the designated lead case unless otherwise specified. The Court does not recount the factual allegations already discussed in the prior dismissal orders. (*See* ECF No. 37; *Pease*, ECF No. 11.)

Less than two months later, ten Plaintiffs amended their pleadings as of right.  (ECF No. 3 (First Amended Complaint ("FAC")).)  These Plaintiffs sued the same named Defendants once more, but also named 500 SDPD and SDSD Doe Defendants allegedly involved in arresting and detaining the Plaintiffs or failing to prevent alleged constitutional violations on the day of the rally.  (*Id.* ¶¶ 26–32.)  The FAC expanded the *Monell* claim to include the County and Gore, alleged new Section 1983 claims for direct violations of Plaintiffs' First and Fourth Amendment rights, and re-alleged the four California state law claims.  (*Id.* ¶¶ 43–83.)  The City and Zimmerman answered the FAC.  (ECF No. 5.)  The County and Gore moved to dismiss.  (ECF No. 6.)

Thereafter, Magistrate Judge Nita Stormes entered a scheduling order on November 6, 2017, which set January 5, 2018 as the deadline to join other parties, to amend the pleadings, or to file additional pleadings.  (ECF No. 18 ¶ 2.)  The *Cervantes* Plaintiffs moved to amend the FAC on this deadline, which was unopposed.  (ECF Nos. 20, 22.)  The Court granted the motion and Plaintiffs filed the Second Amended Complaint ("SAC"), which named 32 new individual SDPD officers as City Defendants and reduced the number of fictitious Doe Defendants to 469.  (ECF No. 25.)  The newly named City Defendant officers were incorporated into Plaintiffs' Section 1983 claims for direct violations of Plaintiffs' First and Fourth Amendment rights.  (*Id.* ¶¶ 74–153.)  The City, Zimmerman, and new City Defendant officers answered the SAC.  (ECF Nos. 28, 34.)  The County and Gore once more moved to dismiss.  (ECF No. 31.)  The Court granted the motion to dismiss and provided Plaintiffs leave to amend their allegations against the County and Gore one last time no later than May 7, 2018.  (ECF No. 37.)  The *Cervantes* Plaintiffs timely filed the operative Third Amended Complaint ("TAC").  (ECF No. 38.)  The County and Gore did not move to dismiss again, but rather answered.  (ECF No. 42.)

Between late March 2018 and December 2018, the Court entertained several requests from the parties, which generally stipulated to dismissal of various plaintiffs and numerous defendant officers initially named in the SAC and named again in the TAC. (ECF Nos. 35, 36, 56, 57, 60, 62, 65, 67.) The *Cervantes* Plaintiffs have winnowed down to the current four plaintiffs. The remaining *Cervantes* Defendants are the City, Zimmerman, the County, Gore and about a dozen SDPD officers.

Pease decided to file his own lawsuit related to the rally on May 29, 2018. (*Pease*, ECF No. 1.) He named as defendants the City, Zimmerman, the County, Gore, two SDPD officers, and SDSD Lieutenant Boudreau, alleging a Section 1983 *Monell* claim and Section 1983 claims for direct violations of his First, Fourth and Eighth Amendment rights. (*Id.*) The City and City Defendants answered. (*Pease*, ECF No. 3.) The County and Gore moved to dismiss, which the Court granted in part by dismissing the Eighth Amendment claim with prejudice and denied in part as to all remaining Section 1983 claims. (*Pease*, ECF Nos. 4, 11.) Gore answered. (*Pease*, ECF No. 15.)

On December 19, 2018, the Court ordered *Cervantes* and *Pease* consolidated, with *Cervantes* designated as the lead case. (ECF No. 68.) The Court did not order the filing of a consolidated complaint. (*Id.*) Several days after consolidation, Defendants moved under Rule 37(c) to exclude the *Cervantes* Plaintiffs from relying on certain emotional damages evidence the *Cervantes* Plaintiffs allegedly did not timely disclose. (ECF No. 70.) Plaintiffs filed the present motion for leave to file the PFAC a day later on December 28, 2018. (ECF No. 71.)

Since the filing of the latter motion, Judge Stormes has issued a Consolidated Scheduling Order, which does not alter the earlier deadline to amend in *Cervantes* and affirms that all fact discovery in *Cervantes* is closed with all remaining discovery

for *Pease* set to close on April 19, 2019.  (ECF No. 74.)  The cases otherwise have been placed onto a uniform schedule for all remaining pre-trial deadlines.  (*Id*.)

## LEGAL STANDARDS

Rule 16(b) and Rule 15(a) govern consideration of the present motion for leave to amend.  When a motion for leave to amend is filed after entry of a Rule 16 scheduling order, the motion "is governed first by Rule 16(b), and only secondarily by Rule 15(a)."  *Jackson v. Laureate, Inc*., 186 F.R.D. 605, 607 (E.D. Cal. 1999) (citing *Johnson v. Mammoth Recreations, Inc*., 975 F.2d 604, 607–08 (9th Cir. 1992)).  Pursuant to Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  Granting leave to amend without applying Rule 16(b)'s requirements first "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."  *Sosa v. Airprint Systems, Inc*., 133 F.3d 1417, 1419 (11th Cir. 1998).  Thus, the party seeking leave to amend cannot simply "appeal to the liberal amendment procedures afforded by Rule 15," but rather must show good cause in the first instance.  *AmerisourceBergen Corp. v. Dialysist West, Inc*., 465 F.3d 946, 952 (9th Cir. 2006); *Johnson*, 975 F.2d at 609.

If Rule 16(b) is satisfied, then the court considers the propriety of amendment pursuant to Rule 15(a).  "[A] party may amend [its] pleading only by leave of court or by written consent of the party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Rule 15(a) is very liberal[.]"  *AmerisourceBergen Corp.*, 465 F.3d at 951; *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  "This liberality . . . is not dependent on whether the amendment will add causes of action or parties.''  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987).  Whether to grant a motion to amend depends on five factors: (1) bad faith, (2) prejudice to the opposing party, (3) futility,

(4) undue delay, and (5) whether the plaintiff has previously amended. *Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991).

## DISCUSSION[3]

The parties focus on the propriety of permitting all Plaintiffs to add Cinnamo as a newly named defendant and remove from the operative pleadings the express "official capacity" allegation for individual defendants. (ECF Nos. 71, 77.) There are also plaintiff-specific proposed amendments. The *Cervantes* Plaintiffs seek to add factual allegations regarding SDSD Officer Radasa and elaborate on the emotional damages claimed by Goodman, Cervantes and Sanchez. Pease seeks to add Officer Radasa as a defendant for his claims. The Court considers whether leave to amend is proper for each of these proposed amendments. In addition, the Court considers whether leave should be granted for new allegations of First Amendment viewpoint discrimination and "discrimination" by SDPD and SDSD officers against all Plaintiffs. The Court addresses these considerations in light of Rule 16(b)(4) and Rule 15(a) respectively.

## A.    Rule 16(b)(4) Standard

Two issues arise under Rule 16(b)(4). The first issue is whether all Plaintiffs are subject to Rule 16(b)(4)'s good cause standard. The Court concludes that only the *Cervantes* Plaintiffs must satisfy the Rule. The second issue is whether the *Cervantes* Plaintiffs have shown good cause to modify the deadline to amend set in the original *Cervantes* Scheduling Order. Good cause exists for some, but not all amendments the *Cervantes* Plaintiffs propose.

---

[3] Despite nominally protesting the PFAC in its entirety, Defendants do not controvert the propriety of proposed amendments to reflect changes in *Cervantes* based on previous dismissals for certain Plaintiffs and Defendants. The Court construes Plaintiffs' motion as unopposed for such amendments.

### 1. Only the *Cervantes* Plaintiffs Must Satisfy Rule 16(b)(4)

Plaintiffs do not question that Rule 16(b)(4)'s good cause standard applies to all amendments sought by the *Cervantes* Plaintiffs. (ECF No. 71 at 10–14.) The Court affirms that the standard applies. Judge Stormes entered a Scheduling Order in *Cervantes* in November 2017, which set January 5, 2018 as the deadline to file "[a]ny motion to join other parties, to amend the pleadings, or to file additional pleadings[.]" (ECF No. 18 at 1.) Nearly twelve months after this deadline passed, the Court consolidated *Cervantes* and *Pease*, but did not require the filing of a consolidated complaint. (ECF No. 68.) Judge Stormes entered a Consolidated Scheduling Order following the filing of Plaintiffs' opening brief for their present motion, which affects only "[a]ll remaining dates" following consolidation. (ECF No. 74.) The order does not re-set the *Cervantes* deadline to amend the pleadings. (*Id.*) Thus, the original Scheduling Order deadline controls the *Cervantes* Plaintiffs' request to amend.

Plaintiffs also believe that proposed amendments Pease requests are not subject to Rule 16(b)(4) because *Pease* lacked a scheduling order before consolidation. (ECF No. 71 at 10–11.) The Court agrees that the proposed amendments for *Pease* are not subject to Rule 16(b)'s good cause standard in the first instance for two reasons.[4]

First, no scheduling order was ever entered in *Pease*. This alone weighs against application of Rule 16(b) to any proposed amendments by Pease. The Court, however, is mindful that Pease shares a close identity of interest with the *Cervantes* Plaintiffs. Courts have considered a scheduling order deadline in an earlier case when

---

[4] Plaintiffs have argued that any amendments for *Pease* are timely because the *Pease* parties agreed in their pre-consolidation joint discovery plan that parties could amend pleadings without leave of court by December 31, 2018. (ECF No. 71 at 11.) The joint discovery plan, however, only proposed a deadline for amendment. (*Pease*, ECF No. 19 at 3.) A proposal is not a stipulation and Defendants plainly challenge amendments Pease seeks. Thus, the Court does not find the proposal controls.

the same plaintiff files a later case involving the same factual matter. In such circumstances, courts have effectively used the deadline to dismiss the later-filed case or deny a motion to amend a complaint in the later-filed case. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007) (affirming district court's dismissal of later-filed case with prejudice when plaintiff filed the case after the district court had denied an untimely motion to amend in the earlier-filed case); *Hutchins v. UPS*, No. 01-cv-1462-WJM, 2005 WL 1793695, at *2–3 (D.N.J. July 26, 2005) (concluding that the procedural history of two related cases filed by same plaintiff warranted application of Rule 16 to a motion for leave to amend sought in the later-filed case), *aff'd by*, 197 Fed App'x 152 (3d Cir. 2006). The rationale behind such a move lies in the notion that a plaintiff should not be permitted to circumvent the scheduling order of an earlier-filed case by filing a new case.

The Court has considered whether it would be appropriate to apply Rule 16(b) in a similar vein here given the close identity of interest between Pease and the *Cervantes* Plaintiffs, but has concluded that it would not be appropriate. Although Pease could have raised his claims in the *Cervantes* action pursuant to Rule 20, he was not required to join the *Cervantes* plaintiffs in their original pleading. *See* Fed. R. Civ. P. 20(a)(1) ("Persons *may* join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." (emphasis added)). Subjecting Pease to Rule 16(b) would improperly treat him as a *Cervantes* Plaintiff.

Second, application of Rule 16(b) to *Pease* would limit Pease's ability to amend under Rule 15(a) based on an erroneous view of the legal effect of consolidation. "[C]onsolidation . . . does not merge the suits into a single cause, or

17cv1230

change the rights of the parties, or make those who are parties in one suit parties in another." *Johnson v. Manhattan Ry. Co*., 289 U.S. 479, 496–97 (1933). Thus, consolidation cannot itself result in application of the *Cervantes* deadline to *Pease*. That Pease has moved with the *Cervantes* Plaintiffs for leave to file a consolidated amended complaint does not alter this conclusion. "[A] master complaint is a procedural device which is used to streamline pretrial motions and discovery." *Turner v. Murphy Oil USA, Inc*., No. 05-4206, 2005 U.S. Dist. LEXIS 45123, at *6 (E.D. La. Dec. 22, 2005) (citing *In re Ford Motor Co./Citibank (South Dakota), N.A.,* 264 F.3d 952, 964–65 (9th Cir. 2001)). A master complaint "does not supersede the underlying cases in such a way as to render them non-existent," but rather "merely becomes the operative pleading in the case[.]" *Id.*[5] Thus, the Court may appropriately disregard Rule 16(b) for *Pease* and apply the Rule only to all proposed amendments for *Cervantes*.

### 2. Application of the Rule 16(b)(4) Standard

Good cause under Rule 16(b)(4) means that a pretrial deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Zivkovic v. S. Cal. Edison Co*., 302 F.3d 1080, 1087 (9th Cir. 2002) (internal quotations and citations omitted). When a party moves for leave to amend after the deadline to amend has passed, good cause "primarily considers the diligence of the party seeking

---

[5] The Court rejects Defendants' request that the Court should preclude Plaintiffs from requesting bifurcation of trial simply because Plaintiffs seek to file all claims in one complaint. (ECF No. 75 at 8.) The Court possesses broad authority to decide how to manage the trial of claims and issues even when a single case is before it. *See* Fed. R. Civ. P. 42(b); *Zivkovic v. S. Cal. Edison Co*., 302 F.3d 1080, 1087 (9th Cir. 2002) ("Rule 42(b) . . . confers broad discretion upon the district court to bifurcate a trial, thereby deferring costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues."); *Estate of Lopez v. Suhr*, No. 15-CV-01846-HSG, 2016 WL 1639547, at *4 (N.D. Cal. Apr. 26, 2016) ("Rule 42(b) confers broad authority and gives the district court virtually unlimited freedom to try the issues in whatever way trial convenience requires.") (internal citations omitted). The mere filing of a consolidated complaint does not restrain this authority, nor does Plaintiffs' request to file a consolidated complaint render any bifurcation request improper.

– 9 –

amendment." *Johnson*, 975 F.2d at 609. The diligence standard is "more stringent" than Rule 15(a). *See AmerisourceBergen Corp.*, 465 F.3d at 952; *Morgal v. Maricopa Cty. Bd. of Supervisors*, 284 F.R.D. 452, 459 (D. Ariz. 2012). "If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic*, 302 F.3d at 1087. "Prejudice to the non-moving party, while not required under Rule 16(b)'s good cause assessment, can serve as an additional reason to deny a motion[.]" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

Unlike Rule 15(a), the movant bears the burden of showing good cause under Rule 16(b). *Kindred Ltd. P'ship v. Screen Actors Guild*, No. CV 08-2220 PSG (PJWx), 2009 WL 545781, at *1 (C.D. Cal. Mar. 3, 2009). A party may show good cause when the amendment is based on new and pertinent information that came to light after the deadline to amend. *See Lyon v. United States Immigration & Customs Enforcement*, 308 F.R.D. 203, 216 (N.D. Cal 2015); *Burns ex rel. Office of Pub. Guardian v. Hale & Dorr, LLP*, 242 F.R.D. 170, 174 (D. Mass. 2007) (good cause exists when facts came to light as a result of discovery). Relatedly, a party may show good cause when amendment is sought to conform the pleadings to critical litigation developments. *See Safeway, Inc. v. Sugarloaf P'ship, LLC*, 423 F. Supp. 2d 531, 539 (D. Md. 2006). And a party may show good cause if amendment is sought based on a recent change in law. *Lyon*, 308 F.R.D. at 216; *Pumpco, Inc. v. Schenker Int'l, Inc.*, 204 F.R.D. 667, 668 (D. Colo. 2001)).

Diligence is a "case-specific" inquiry that turns primarily on the length of time between the ground necessitating amendment and the movant's request to amend. *See San Diego Ass'n of Realtors, Inc. v. Sandicor, Inc.*, No. 16cv96-MMA (KSC), 2017 WL 6344816, at *5 (S.D. Cal. Dec. 12, 2017); *Aldan v. World Corp.*, 267 F.R.D. 346, 357 (N. Mar. I. 2010). "A party fails to show good cause when the proposed

amendment rests on information that the party knew, or should have known, in advance of the deadline." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 194 (S.D.N.Y. 2014) (internal quotations and citations omitted). Courts need not find good cause on the whole, but rather may appropriately consider whether the movant has shown good cause for each proposed amendment or group of related amendments. *See San Diego Ass'n of Realtors, Inc.*, 2017 WL 6344816, at *5–8 (considering whether plaintiff had shown good cause for each of the proposed nine amendments); *Reinlasoder v. City of Colstrip*, CV-12-107-BLG-SEH-CSO, 2014 U.S. Dist. LEXIS 30160, at *7–11 (D. Mont. Feb. 18, 2014) (same). The Court finds that there is good cause to permit the proposed Cinnamo and individual capacity amendments, but the *Cervante*s Plaintiffs have otherwise failed to show good cause for other proposed amendments.

### a. The Proposed Cinnamo Amendments

The only express good cause argument the *Cervantes* Plaintiffs make concerns their proposed amendments for Captain Cinnamo. According to the proposed amendments, Cinnamo "was in top command" for the County's "participation in the event and was also present in the command center" where SDPD and SDSD monitored the events of the rally and were in "communication with officers in the field." (PFAC ¶¶ 4, 6.) Cinnamo, with Zimmerman, allegedly ordered SDPD and SDSD officers to seal off certain areas around the Convention Center and Cinnamo, alone, allegedly ordered SDSD deputies to support SDPD officers in making arrests and to take protestors into custody. (*Id.* ¶¶ 7, 9.) Plaintiffs seek to add Cinnamo to the *Monell* claim on the ground that Gore delegated final policymaking authority to him. (*Id.* ¶ 64.) Plaintiffs also seek to add Cinnamo to their claims of direct violations of their First and Fourth Amendment rights and their request for punitive damages. (*Id.* ¶ 67; *id.* at 33.)

Plaintiffs contend that their "diligence in pursing the identity of Doe Defendant Captain Cinnamo, and not learning of his identity until six months after the deadline to amend the pleadings" shows good cause. (ECF No. 71 at 12.) The Court does not agree that the *Cervantes* Plaintiffs have diligently sought the Cinnamo amendments. Nevertheless, other practical considerations warrant permitting the Cinnamo amendments for the *Cervantes* Plaintiffs.

The Court credits that the *Cervantes* Plaintiffs could not have met the January 5, 2018 deadline to amend for the proposed Cinnamo amendments. The record shows that the County did not disclose Cinnamo in its October 27, 2017 initial disclosures. (ECF No. 71-2 Pease Decl. Ex. 7.) It was not until a May 21, 2018 discovery meet and confer that the County's counsel apparently made Lieutenant Boudreau—another County officer not initially disclosed—available for deposition as a witness who could answer Plaintiffs' questions about the rally. (ECF No. 71 at 10; Pease Decl. ¶ 6.) The County's counsel apparently represented that Boudreau was the County's point person at the Command Center. (ECF No. 71 at 10; Pease Decl. ¶ 6.) During Boudreau's June 20, 2018 deposition, however, Plaintiffs learned that Cinnamo, and not Boudreau, was "in charge" for the County. (ECF No. 71 at 12; Pease Decl. ¶ 7.) Thus, the *Cervantes* Plaintiffs did not know of Cinnamo until over five months after the deadline to amend had passed.

Plaintiffs suggest that they did not immediately seek amendment in June 2018 so they could more fully develop their understanding of Cinnamo's role. The record contradicts this suggestion. Plaintiffs had already decided that Cinnamo should be a defendant based on the information they learned from Boudreau. Specifically, Pease informed the County's counsel on June 22, 2018 of his belief that Cinnamo should be substituted for one of the Doe Defendants in *Cervantes* and requested that the County join a joint motion to do so, a stipulation which the County's counsel refused.

(Pease Decl. ¶¶ 8–9, Exs. 3–4.)  The present request comes six months after Plaintiffs' counsel recognized that Cinnamo should be defendant.

The *Cervantes* Plaintiffs admittedly delayed their request to avoid "piecemeal contested motions" and to obtain a joint motion to amend.  (ECF No. 71 at 13.)  Although the *Cervantes* Plaintiffs' efforts may be understandable as a litigation tactic, a movant's conceded decision to delay seeking a proposed amendment for several months cannot show good cause.  *See Ruvalcaba v. Ocwen Loan Servicing, LLC*, No. 15-cv-00744-BAS (DHB), 2018 WL 295973, at *2 (S.D. Cal. Jan. 4, 2018) (decision to delay seeking proposed amendment until some five months after taking discovery on which party "relied to formulate the proposed amendments cannot support a finding of diligence"); *Long v. Ford Motor Co.*, No. CV 07-2206-PHX-JAT, 2009 WL 903404, at *4 (D. Ariz. Apr. 1, 2009) (finding that "[a] tactical decision to delay does not merit good cause" regardless of a defendant's conduct because "Rule 16 focuses on the diligence of the moving party").  Plaintiffs were not obligated to seek a stipulation from Defendants and, relatedly, Defendants were not obligated to consent to an amendment the Plaintiffs desired.[6]  *See* Fed. R. Civ. P. 15(a)(2).

Even if the Court accepts Plaintiffs' present argument that they needed more discovery for Cinnamo, they have still not shown good cause.  It may be reasonable for a plaintiff to delay seeking an amendment to place newly discovered information into context.  *See DCD Programs, Ltd.*, 833 F.2d at 187 (finding no "unjust delay" when plaintiffs "waited [to move to amend] until they had sufficient evidence of conduct upon which they could base claims of wrongful conduct"); *A.T. v. Everett*

---

[6] Even if the Court accounted for Defendants' refusal to stipulate, the *Cervantes* Plaintiffs were aware as early as June 2018 that the Defendants were not willing to consent to their proposed Cinnamo amendments.  Plaintiffs' December 2018 efforts—after an unexplained three and a half months of apparent silence on the issue—cannot render their efforts diligent.

– 13 –

*Sch. Dist.*, No. C16-1536JLR, 2017 WL 4811361, at *3 (W.D. Wash. Oct. 25, 2017) (plaintiff's three-week delay to pursue corroborating evidence did not undermine a finding of diligence for amendment); *Carefusion 213, LLC v. Prof'l Disposables, Inc.*, No. 09-2616-KHV-DJW, 2010 WL 4004874, at *4 (D. Kan. Oct. 12, 2010) (finding good cause when plaintiff waited three weeks to amend so that plaintiff could take a Rule 30(b)(6) deposition concerning a late-produced document). But as Defendants recognize (ECF No. 75 at 7), the present request comes nearly four months after the *Cervantes* Plaintiffs took Cinnamo's deposition. This delay simply cannot show the diligence necessary for a finding of good cause even if it was initially reasonable to wait for further discovery. *See Ruvalcaba*, 2018 WL 295973, at *2 (three-month delay insufficient to show good cause); *Sako v. Wells Fargo Bank, N.A.*, No. 14cv1034-GPC (JMA), 2015 WL 5022326, at *2 (S.D. Cal. Aug. 24, 2015) (filing a motion to amend two months after discovering the new facts did not constitute diligence); *Bonneau v. SAP Am., Inc.*, No. C 03-5516 PJH, 2004 WL 2714406, at *1 (N.D. Cal. Nov. 29, 2004) (denying leave to amend when plaintiff's attorneys waited approximately three months to amend after plaintiff's deposition).

Although the *Cervantes* Plaintiffs' proffered reasons do not show good cause, "the practical realities of this case persuade the court that untimely amendment is the lesser of two evils." *Travelers Cas. & Sur. Co. of Am. v. Dunmore*, No. S-07-2493 LKK/DAD, 2010 WL 2546070, at *6 (E.D. Cal. June 23, 2010). It makes little sense to apply Rule 16(b) to bar the *Cervantes* Plaintiffs from raising the Cinnamo amendments. Doing so would bar these Plaintiffs from pursing Section 1983 claims against Cinnamo for the Trump rally given the applicable two-year of statute of limitations based on information uniquely in the County's possession and which the County did not disclose until after the *Cervantes* Plaintiffs filed the TAC. In these circumstances, the Court will not adhere to a procedural nicety at the expense of the merits. *See Allen v. Bayer Corp. (In re: Phenylpropanolamine (PPA) Prods. Liab.*

– 14 –

*Litig.)*, 460 F.3d 1217, 1227 (9th Cir. 2006) (Rule 16's purpose "is to get cases decided on the merits of issues that are truly meritorious and in dispute[.]"); *Morton Int'l, Inc. v. A.E. Staley Mfg. Co.*, 343 F.3d 669, 684 (3d Cir. 2003) ("Rule 16 was not intended to function as an inflexible straightjacket on the conduct of litigation." (citations omitted)); *Carefusion 213, LLC*, 2010 WL 4004874, at *4 ("In exercising its discretion, the court must keep in mind that the Federal Rules of Civil Procedure are designed to facilitate decisions on the merits rather than on pleading technicalities."). Accordingly, the Court finds that despite the inadequate reasons the *Cervantes* Plaintiffs proffer, good cause exists for the Cinnamo amendments.

### b.    The Proposed Individual Capacity Amendment

The operative Third Amended Complaint refers to all officers as being "named in his [or her] official capacity." (TAC ¶¶ 24–56.) The second proposed amendment concerns removal of this "official capacity" allegation for all individual defendants. (PFAC ¶¶ 33–46.) Plaintiffs fail to identify this proposed amendment in their opening brief, but they argue in reply that the proposed amendment should be permitted. (*Compare* ECF No. 71 *with* ECF No. 77 at 5–10.) Plaintiffs' reply arguments fail to conduct a good cause analysis, but the Court finds that the arguments provide a basis for the Court to find good cause.

All parties recognize the fundamental distinction between an official capacity suit and an individual capacity suit. "[T]he distinction between official-capacity suits and personal-capacity suits is more than 'a mere pleading device.'" *Hafer v. Melo*, 502 U.S. 21, 27 (1991). "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166. By contrast, official capacity-suits

– 15 –

"generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978). "More is required in an official-capacity action, . . . for a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation[.]" *Graham*, 473 U.S. at 166 (quoting *Polk Cty v. Dodson*, 454 U.S. 312, 326 (1981)).

The defenses available to a defendant are affected by whether a suit is an official capacity or individual capacity suit. "[T]he only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Hafer*, 502 U.S. at 25. "[O]fficials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Id.*; *Hester v. Redwood Cty.*, 885 F. Supp. 2d 934, 944 (D. Minn. 2012) ("A defendant sued in an individual capacity can plead the affirmative defense of qualified immunity."). And capacity also affects what relief a plaintiff may obtain. A plaintiff may not recover punitive damages against a governmental entity or an individual governmental officer in his or her official capacity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Shehee v. Baca*, No. CV 08–2277–FMC (E), 2008 WL 1968549, at *6 (C.D. Cal. May 2, 2008) (same).

Plaintiffs argue amendment should be permitted because the City Defendants have treated this suit as an individual capacity suit by presenting an affirmative defense "unique" to individual liability suits, namely qualified immunity, and by propounding discovery consistent with an individual liability suit. (ECF No. 77 at 5–6.) Plaintiffs argue that they have always intended to sue the individual defendants in their individual capacity and have always sought punitive damages from certain officers. (*Id.* at 7.) Plaintiffs further contend that the difference between an official

17cv1230

capacity and individual capacity suit underscores the "critical" nature of the amendment.  (*Id.* at 6.)  Defendants argue that Plaintiffs do not provide adequate justification for the proposed individual capacity amendment and Plaintiffs have not identified any new information that would give rise to individual liability.  (ECF No. 75 at 6.)[7]

The "critical" distinction between an official capacity suit and an individual capacity suit could cut for or against a finding of good cause.  On the one hand, the distinction could underscore that the *Cervantes* Plaintiffs have failed to exercise appropriate diligence in clarifying the nature of the individual defendants' liability. Plaintiffs' allegation that the individual officers are named in their official capacity may be the precise type of carelessness that precludes a finding of good cause for this proposed amendment, especially given that Plaintiffs are represented by counsel.  *See Johnson*, 975 F.2d at 609 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.").  If the individual capacity amendment was so critical, then it is not clear why all *Cervantes* pleadings purported to name the individual defendants in their official capacity.  (ECF No. 1 ¶¶ 13–14 (original complaint); FAC ¶¶ 24–25; SAC ¶¶ 24–56; TAC ¶¶ 24–56.)  On the other hand, the nature of a proposed amendment may underscore that a departure from a rigid application of Rule 16(b) is warranted.  *See C.F. v. Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1196 (C.D. Cal. 2009) (citing *Sw. Bell Telephone Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)) (noting that "the importance of the amendment" sought is appropriately considered under Rule 16(b) and permitting defendant to assert untimely qualified immunity defense in Section 1983 action).  The Court finds that a departure from a rigid application of Rule 16(b) is warranted given

---

[7] Defendants largely oppose the change on the ground that they would face prejudice if the cases are changed "from purely official-capacity ones to personal capacity ones."  (ECF No. 75 at 1–5.)  The Court defers consideration of the prejudice argument for its Rule 15(a) analysis and ultimately rejects the argument.

the overall nature of the pleadings and, more critically, the course of the proceedings.

"In many cases, the complaint will not clearly specify whether officials are being sued personally, in their official capacities, or both. 'The course of proceedings' in such cases typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985) (citation omitted). When the pleadings are not clear, courts use this "course-of-proceedings" test to determine whether a defendant has received notice of the plaintiff's intent to hold the defendant personally liable. *See Moore v. Harriman*, 272 F.3d 769, 773 (6th Cir. 2001); *Atchinson v. Dist. of Columbia*, 73 F.3d 418, 425 (D.C. Cir. 1996); *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995); *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529–30 (2d Cir. 1993); *Hill v. Shelander*, 924 F.2d 1370, 1373–74 (7th Cir. 1991); *Houston v. Reich*, 932 F.2d 883, 885 (10th Cir. 1991); *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990); *Lundgren v. McDaniel*, 814 F.2d 600, 604 (11th Cir. 1987); *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973)). The test requires consideration of "requests for compensatory or punitive damages and the nature of any defenses raised in response to the complaint, particularly claims of qualified immunity," a defense that is available only to officers who are sued in their individual capacity. *Moore*, 272 F.3d at 772 n.1. "[T]he basis of the claims asserted and the nature of relief sought" can also show that a plaintiff intended to bring a Section 1983 action against defendant officials in their individual capacity. *See Price v. Akaka*, 928 F.2d 824, 828 (9th Cir. 1991).

The pleadings contain an allegation that the officers are named in their official capacity. If the pleadings only stated this and if the Defendants had treated the litigation as solely an official capacity suit, the Court would agree with Defendants that the *Cervantes* Plaintiffs cannot seek to remove the official capacity allegation now. However, many allegations are inconsistent with an official capacity suit, but

– 18 –

instead point toward claims asserted against the individual Defendants in their individual capacity.

First, since the filing of the *Cervantes* Plaintiffs' First Amended Complaint—the pleadings which were first answered by the City and which the County moved to dismiss—the pleadings have alleged a Section 1983 *Monell* claim against the City and the County and the respective official who would create Section 1983 liability against a municipal entity, without naming the individual officers allegedly involved in the Plaintiffs' arrests. Separately, the pleadings have alleged Section 1983 claims for First and Fourth Amendments violations allegedly committed by the individual Defendant officer who allegedly ordered the arrest of or arrested and/or detained a given *Cervantes* Plaintiff. (*Compare* FAC ¶¶ 39–42 *with id.* ¶¶ 43–51 (originally naming Doe Defendant officers); SAC ¶¶ 70–73 *with id.* ¶¶ 74–153 (identifying myriad individual Defendant officers by name and additional Doe Defendant officers); TAC ¶¶ 67–73 *with id.* ¶¶ 74–140 (same).) Second, the *Cervantes* Plaintiffs seek compensatory damages from all Defendants, without limitation by claim. (FAC at 15; SAC; TAC at 24.) And finally, the *Cervantes* Plaintiffs seek punitive damages from certain individually named Defendants, including Zimmerman and Gore. (FAC at 15; SAC; TAC at 24.) As both sides recognize, punitive damages may not be recovered against officials in their official capacity. These features dispel the notion that the claims asserted by the *Cervantes* Plaintiffs have only been official capacity claims or that the proposed amendments are an attempt to change the litigation at a late stage. *See Johnson v. Hanada*, 06-CV-1206-BR, 2009 WL 73867, at *5 (D. Or. Jan. 8, 2009) (finding that a defendant had timely notice that suit was against him in his individual capacity because the plaintiff requested compensatory and punitive damages and alleged the officer was an individual employed by a local city).

The course of the proceedings further confirms for the Court that Defendants

17cv1230

have had notice that the non-*Monell* Section 1983 claims are asserted against the individual Defendant officers in the officers' individual capacity. The County and County Defendant Gore moved to dismiss the *Cervantes* claims against the County and Gore by addressing Section 1983 *Monell* liability separately from whether Gore can be held personally liable. (ECF No. 31 at 3–7 (*Monell* claim); *id.* at 7–9, 14 ("Sheriff Gore should be dismissed from the first three causes of action under 42 U.S.C. § 1983 because the SAC does not contain sufficient factual allegation showing he personally violated the Plaintiffs' constitutional right.").) If the County and Gore had thought that there was no individual liability claimed against Gore, it is not clear why they argued personal liability. And in ruling on the County's and Gore's motion, the Court in turn conducted separate analyses for *Monell* liability and personal liability for Gore. (ECF No. 37 at 4–7 (*Monell* claim); *id.* at 7–11 (personal liability).)[8]

More compellingly, the City, Zimmerman, and the named City Defendant officers—who constitute the majority of the individual Defendant officers in these consolidated cases—have raised qualified immunity as an affirmative defense in each answer to the *Cervantes* pleadings. (ECF No. 5 at 15 (City and Zimmerman's Answer to FAC); ECF No. 28 at 20 (City and Zimmerman's Answer to SAC); ECF No. 34 at 21 (Answer to SAC by City Defendant officers); ECF No. 41 at 19 (Answer to TAC by City, Zimmerman, and all City Defendant officers).) A defendant's assertion of a qualified immunity defense is compelling evidence of timely notice that a Section 1983 claim is also asserted against that defendant in his or her individual capacity. *See Johnson*, 2009 WL 73867, at *5. And a party may show good cause to amend a

---

[8] The County's and Gore's motion to dismiss in *Pease* solely addressed Section 1983 *Monell* liability. (*Pease*, ECF No. 4-1 at 2–3, 5–6.) Although the County and Gore argued that Pease failed to state Section 1983 claims against Gore, they failed to advance any arguments about personal liability despite the fact the allegations and Section 1983 claims in *Pease* are similar to those in *Cervantes*.

pleading after a Rule 16(b) deadline if the opposing party was already on notice of the reason for amendment. *See Turner v. Sheriff of Sacramento*, No. 2:09-cv-0117 WBS KJN P, 2011 WL 1811028, at *5 (E.D. Cal. May 10, 2011) (acknowledging that notice of amendment can provide good cause); *Kindred Ltd. P'ship*, 2009 WL 545781, at *1–2 (same); *Sousa ex rel. Will of Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*, 252 F. Supp. 2d 1046, 1059 (E.D. Cal. 2002) (permitting amendment of the scheduling order to allow defendants to include an affirmative defense because the defense was raised in defendants' answer, and plaintiffs had addressed it in their motion for summary judgment). Accordingly, the Court finds that there is good cause under Rule 16(b) to permit the individual capacity amendment for the *Cervantes* Plaintiffs.[9]

### c.      Other Proposed Amendments

The PFAC seeks to add several new "allegations of fact." First, the PFAC seeks to offer new factual allegations regarding Defendant Radasa's role in the *Cervantes* Plaintiffs' arrests. (PFAC ¶ 56.) Second, the PFAC contends that (1) Defendants "engaged in viewpoint discrimination by allowing pro-Trump demonstrators to disperse freely . . . without threat of arrest," but not permitting "perceived anti-Trump protestors" to do so and (2) Plaintiffs "suffered discrimination in that Defendants were instructed to not arrest any members of the press, despite the fact that journalists have no greater or lesser right under the First or Fourth Amendment than Plaintiffs." (PFAC ¶¶ 52–53.) Third, the PFAC seeks to "describe[] in greater detail the emotional distress damages" certain *Cervantes* Plaintiffs claim. (ECF No. 71 at 9; *see also* PFAC ¶¶ 19–22.) The *Cervantes*

---

[9] The Court observes that Defendant Gore did not assert a qualified immunity defense in his answer to the *Cervantes* Third Amended Complaint. (ECF No. 42.) Given the lack of clarity regarding the *Cervantes* Plaintiffs' intentions, the Court finds that Defendant Gore is not precluded from raising qualified immunity as a defense in responding to the proposed amendment to the Fourth Amended Complaint.

– 21 –

Plaintiffs have failed to show good cause for these proposed amendments.

First, of these proposed amendments, the *Cervantes* Plaintiffs come closest to explaining why they now seek to make new allegations against Officer Radasa. The *Cervantes* Plaintiffs contend that "it was not until further discovery that Defendants specified that Sgt. Radasa had actually ordered" the arrests of Steinberg and Goodman. (ECF No. 71 at 9.) The *Cervantes* Plaintiffs further allege "on information and belief" that the reference to "commanding officers" in discovery they have obtained for Cervantes's and Sanchez's arrests means that Radasa also likely ordered the arrests of these Plaintiffs. (*Id.*) Conspicuously absent from this account is any explanation of when the *Cervantes* Plaintiffs learned of the new information regarding Radasa. It is unclear whether the information was learned before or after the January 5, 2018 deadline to amend and, if after the deadline, whether the *Cervantes* Plaintiffs have diligently sought to make the new factual allegations regarding Radasa. The failure to provide such information means that the *Cervantes* Plaintiffs have not shown good cause for these amendments. *See Johnson v. City of Caldwell*, No. 1:13-cv-00492-EJL-CWD, 2015 U.S. Dist. LEXIS 13907, at *31 (D. Idaho Jan. 14, 2015) (plaintiffs failed to show good cause for proposed amendment because they failed to offer any explanation of good cause); *Ticktin v. Carole Fabrics*, No. CV 14-08153-PCT-JAT, 2007 WL 38330, at *1 (D. Ariz. Jan. 4, 2007) ("[A] court may deny a motion to modify a scheduling order where the moving party fails to demonstrate diligence in complying with the order and fails to show good cause for the modification."); *Doe ex rel. Doe v. State of Hawaii Dep't of Educ.*, 351 F. Supp. 2d 998, 1007 (D. Haw. 2004) (plaintiffs failed to show good cause to modify scheduling order because they "ma[de] no explanation for [their] untimely filing"). Because Defendant Radasa is already a defendant, the Court is not compelled to excuse Plaintiffs from the good cause requirement as the Court has done for the proposed Cinnamo amendments.

Second, although Plaintiffs' motion enumerates seven proposed changes to the pleadings, the motion conspicuously fails to identify and address good cause for the First Amendment viewpoint discrimination and press/non-press discrimination proposed amendments. (*See generally* ECF No. 71.) Despite Plaintiffs' suggestions, the fact that the *Cervantes* Plaintiffs seek to raise new civil rights violations does not permit them to bypass Rule 16(b)'s good cause requirement. *See Bolbol v. Feld Entm't, Inc.*, No. C 11-5539 PSG, 2012 WL 5828608, at *5 (N.D. Cal. Nov. 15, 2012) (finding that plaintiffs had failed to show good cause to add Section 1983 claim based on alleged First Amendment violation); *Walker v. City of Los Angeles*, No. CV 09-3857 GAF (PLAx), 2010 WL 11519600, at *4 (C.D. Cal. Nov. 29, 2010) (rejecting plaintiff's argument that good cause existed because he wanted to assert new disability discrimination claims). By failing to offer any explanation, the *Cervantes* Plaintiffs have not met their burden to show good cause for these amendments. *See Johnson*, 2015 U.S. Dist. LEXIS 13907, at *31; *Ticktin*, 2007 WL 38330, at *1; *Doe ex rel. Doe*, 351 F. Supp. 2d at 1007 (D. Haw. 2004).

Moreover, the Court believes that any facts giving rise to these proposed amendments were or should have been known to the *Cervantes* Plaintiffs when they filed their initial complaint in June 2017—over a year after the Trump rally. As attendees of the rally, Plaintiffs did not need discovery from Defendants to allege that they were subjected to viewpoint discrimination as perceived anti-Trump protestors or that they were treated differently than members of the press. Any basic investigation by Plaintiffs' counsel into the events of the May 27, 2016 Trump rally should have occurred long ago such that these proposed amendments could and should have been raised in an earlier pleading. *See Hernandez v. Select Portfolio Servicing, Inc.*, No. CV 15-1896 PA (AJWz), 2016 WL 770869, at *3 (C.D. Cal. Feb. 24, 2016) ("The Court cannot look past Plaintiff's counsel's apparent failure to

investigate the basic circumstances of the [underlying events] until approximately three months after the deadline to amend the pleadings, particularly when Plaintiff had already filed a Complaint, a First Amended Complaint, and a Second Amended Complaint.").

Finally, Plaintiffs' briefing is entirely silent on why certain *Cervantes* Plaintiffs seek to interpose new emotional distress allegations now and why they did not raise the allegations in any prior pleading. (ECF No. 71, 77.) Here, the *Cervantes* Plaintiffs have wholly failed to make any showing under Rule 16(b). The absence of any explanation is sufficient to find that the *Cervantes* Plaintiffs have not shown good cause for their proposed emotional damages amendments. *See Johnson*, 2015 U.S. Dist. LEXIS 13907, at *31; *Ticktin*, 2007 WL 38330, at *1; *Doe ex rel. Doe.*, 351 F. Supp. 2d at 1007.

Defendants, however, argue that the proposed allegations are intended to "preempt" and "thwart" Defendants' Rule 37(c) sanctions motion for Plaintiffs' alleged failure to timely disclose the emotional damages claimed in the proposed allegations. (ECF No. 75 at 5.) The Court acknowledges that Plaintiffs filed their motion for leave to amend a mere day after Defendants filed a Rule 37 sanctions motion, and both motions address Plaintiffs' claimed emotional damages. (*Compare* ECF No. 70 *with* ECF No. 71.) But the Court does not agree that Plaintiffs' motion to amend preempts or thwarts Defendants' discovery sanctions motion.

As an initial matter, permitting a plaintiff to make a factual allegation does not mean that the plaintiff will be permitted to rely on evidence to prove the allegation. The general standard for leave to amend under Rule 15 is different than Rule 37's standard for discovery sanctions. *Compare* Fed. R. Civ. P. 15(a) *with* Fed. R. Civ. P. 37(c).

– 24 –

More importantly, the good cause showing that the *Cervantes* Plaintiffs must make pursuant to Rule 16(b) makes the current procedural posture more analogous to the showing required for a Rule 37(c) motion. Courts have acknowledged that Rule 16(b) and Rule 37(c)'s "factors are largely coextensive. Whereas Rule 16(b) directs a District Court to evaluate (1) the moving party's diligence, and (2) prejudice, Rule 37(c) directs a District Court to assess (1) whether the moving party has shown 'substantial justification,' and (2) harm." *Fid. Nat'l Fin., Inc. v. Nat'l Union Fire Ins. Co.*, 308 F.R.D. 649, 652 (S.D. Cal. 2015) (making this observation in the context of a motion to substitute an expert). Thus, a motion for leave to amend would be a poor choice for the *Cervantes* Plaintiffs to thwart a Rule 37(c) motion regarding emotional damages evidence. The facts pertaining to an untimely disclosure of such evidence would also inform the Court's Rule 16(b) diligence analysis. As the Court has explained, the *Cervantes* Plaintiffs have failed to make any showing of diligence for their proposed emotional distress damages allegations and thus the Court's inquiry for the proposed emotional distress allegations ends.

\*     \*     \*

Based on the foregoing, the *Cervantes* Plaintiffs have only shown good cause for their proposed Cinnamo and individual capacity allegations.[10] The Court must therefore limit its Rule 15 analysis to these amendments for the *Cervantes* Plaintiffs.

---

[10] The *Cervantes* Plaintiffs' failure to show good cause under Rule 16(b) with respect to certain proposed amendments does not mean this order precludes the *Cervantes* Plaintiffs from relying on or submitting the evidence underlying those proposed allegations for which leave is not granted. The proposed *Cervantes* Plaintiffs' proposed amendments regarding Officer Radasa and emotional distress damages plainly elaborate on allegations and damages requests contained in the Third Amended Complaint. Subject to any future evidentiary rulings by the Court, the Federal Rules permit the *Cervantes* Plaintiffs to move to amend the pleadings to conform to proof at trial if Defendants object that any evidence presented is not within the pleadings. *See* Fed. R. Civ. P. 15(b).

## B.    Rule 15(a)

The Court now turns its focus to whether leave to amend is proper under Rule 15(a).  The Court considers five factors, including: (1) whether the motion is sought in bad faith, (2) whether the movant has unduly delayed the request, (3) whether the nonmovant would be prejudiced, (4) whether the moving party has previously amended the pleadings, and (5) the apparent futility of any proposed amendment. *Manzarek v. St. Paul Fire & Ins. Co*., 519 F.3d 1025, 1034 (9th Cir. 2008); *DCD Programs, Ltd.*, 833 F.2d at 186.  "In exercising its discretion with regard to the amendment of pleadings, a court must be guided by the underlying purpose of Rule 15—to facilitate a decision on the merits rather than on the pleadings or technicalities." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (citation and internal quotations omitted).  This "determination should generally be performed with all inferences in favor of granting the motion." *Griggs v. Pace Amer. Group, Inc*., 170 F.3d 877, 880 (9th Cir. 1999).

Unlike Rule 16(b), which places the burden on the movant to show good cause, "'[t]he party opposing amendments bears the burden of showing prejudice,' futility, or one of the other permissible reasons for denying a motion to amend." *Farina v. Compuware Corp*., 256 F. Supp. 2d 1033, 1060 (D. Ariz. 2003) (quoting *DCD Programs*, 833 F.2d at 187); *see also Richardson v. United States*, 841 F.2d 993, 999 (9th Cir. 1988) (stating that leave to amend should be freely given unless opposing party makes "an affirmative showing of either prejudice or bad faith").  A defendant's failure to argue that it "face[s] any—let alone undue—prejudice if the Court grants [a plaintiff] leave to file [an amended complaint]" "grievously weaken[s]" opposition to the motion for leave to amend.  *Stender v. Cardwell*, No. 07-cv-02503-WJM-MJW, 2011 WL 1235414, at *3 (D. Colo. Apr. 1, 2011).  "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under

Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (italics in original).

Defendants advance several arguments relevant to the narrowed scope of the Court's inquiry given the Rule 16(b) determinations. First, Defendants argue that they will suffer prejudice from the individual capacity amendment because it will "force fact discovery to begin anew" by changing the fundamental nature of the case. (ECF No. 75 at 2–5.) Second, Defendants argue that all Plaintiffs delayed seeking the individual capacity and Cinnamo amendments and Pease delayed seeking the Radasa amendments. (*Id.* at 6–8.) Defendants further contend that granting leave to amend will delay the case in contravention of the reasons for consolidation because additional discovery will be necessary and because Defendants "should not be deprived of their right to bring" Rule 12(b)(6) motions for personal liability. (*Id.* at 6.) Third, Defendants argue that the Cinnamo amendments are sought in bad faith. (*Id.* at 8–9.)

In addition to Defendants' arguments, Plaintiffs have raised whether adding Cinnamo as a defendant would be barred by the applicable statute of limitations. (ECF No. 71 at 14–21.) The issue is properly considered as a futility argument. The Court also considers the futility of the PFAC's proposed amendments regarding alleged First Amendment viewpoint discrimination and press/non-press discrimination in arrests insofar as the amendments concern Pease.

### 1.     Alleged Prejudice from Individual Capacity Amendment

The Court first considers Defendants' prejudice argument regarding the individual capacity amendment. Prejudice to the opposing party "carries the greatest weight," *Eminence Capital, LLC.*, 316 F.3d at 1052, and is the "touchstone of the inquiry" under Rule 15, *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d

363, 368 (5th Cir. 2001). "[T]he party opposing amendment bears the burden of showing prejudice." *DCD Programs*, 833 F.2d at 186.

Defendants first argue that proposed individual capacity amendment will be prejudicial because Plaintiffs assert this type of liability at this "late juncture" and "would effectively nullify" the litigation strategy Defendants have pursued for the last year and a half. (ECF No. 75 at 2.) Proposed amendments are prejudicial "when, after a period of extensive discovery, a party proposes a late-tendered amendment that would fundamentally change the case to incorporate new causes of action and that would require discovery in addition to the administrative record." *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1178 (E.D. Cal. 2013) (citation omitted); *Sharkey IRO/IRA v. Franklin Res.*, 263 F.R.D. 298, 301 (D. Md. 2009) ("A motion to amend may prejudice the non-moving party when the motion would shift the theory of the case, thereby rendering the non-moving party's prior discovery a misdirected use of resources and compelling the non-moving party to engage in costly additional discovery."). A "radical shift in direction posed by these [proposed] claims, their tenuous nature, and the inordinate delay" will weigh against granting leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Defendants' argument can only fairly concern the *Cervantes* litigation because *Pease* has been pending for less than a year. Even if the Court considers the argument for all Plaintiffs, the Court cannot find that the individual capacity amendment constitutes prejudice on this basis.

Defendants significantly overstate the nature of the change in the litigation. The individual capacity amendment does not create new claims against the individual Defendant officers. Plaintiffs have always contended that the individual defendants violated their First and Fourth Amendment rights. The individual capacity amendment turns on the same facts underlying these claims. The only practical

– 28 –

17cv1230

difference created by the individual capacity amendment is who bears liability and what defenses may be interposed in a motion for summary judgment and at trial. Defendants also exaggerate the impact of the amendment on their litigation strategy. As the Court has already discussed in its course-of-the-proceedings analysis, the individual City Defendants have preserved qualified immunity as a defense to personal liability and Gore drew on the personal liability standard in his motion to dismiss the *Cervantes* direct constitutional violation claims against him.  The City Defendants have also asserted qualified immunity as a defense to Pease's claims. (*Pease*, ECF No. 3 at 7.)  Thus, the individual capacity amendment does not require a radical shift in Defendants' litigation strategy.  *See Serpa v. SBC Telecomms., Inc.*, 318 F. Supp. 2d 865, 872 (N.D. Cal. 2004) ("[T]he defendants would not be substantially prejudiced if the court granted Serpa's motion to amend her complaint. The ERISA claims Serpa seeks to add depend on the same set of facts as Serpa's preempted state claims; the defendants need not radically change their litigation strategy in order to accommodate the proposed ERISA claims, so defendants cannot claim substantial prejudice[;] in fact, this is the very strategy they have urged since the inception of Serpa's lawsuits.").

Defendants also argue that the individual capacity amendment will require the reopening of all fact discovery.  "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint."  *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming the denial of leave to amend where the motion was made "on the eve of the discovery deadline" and "[a]llowing the motion would have required re-opening discovery, thus delaying the proceedings").  The Court, however, finds that Defendants have not made a strong showing of prejudice on this basis.

17cv1230

As an initial matter, this argument does not apply to *Pease* for which discovery is not closed.  Defendants exaggerate the need to reopen discovery for the *Cervantes* Plaintiffs.  As evidence submitted by the Plaintiffs shows, Defendants propounded discovery related to the circumstances of each *Cervantes* Plaintiff's arrest and expressly inquired about the bases for Plaintiffs' requests for punitive damages.  (ECF No. 77-1 Pease II Decl. ¶ 2 Ex. 10.)  A review of the record also shows that Defendants deposed all *Cervantes* Plaintiffs between mid-November and early December 2018.  (ECF No. 70-2 ¶¶ 10–17.)  Prejudice is minimal when the proposed amendment is consistent with discovery that has already occurred.  *See Peoples v. Cty. of Contra Costa*, No. C 07-00051 MHP, 2008 WL 2225669, at *4 (N.D. Cal. May 28, 2008).  Finally, Plaintiffs expressly state that they "have already conducted written discovery on all of the individual officers and *have no intention of moving to re-open factual discovery*."  (ECF No. 77 at 10 (emphasis added).)  Defendants' assertions of qualified immunity as a defense, their discovery efforts, and Plaintiffs' representation are critical to the Court's conclusion that Defendants will not face the prejudice they assert.

### 2.     Alleged Undue Delay for Certain Amendments

Defendants raise two delay arguments: (1) Plaintiffs delayed seeking amendments to add Cinnamo and Radasa and (2) permitting amendment will unduly delay the case.  The Court rejects both arguments.

### a.     Delay in Seeking Certain Amendments

With respect to alleged delay in the Cinnamo amendments, the *Cervantes* Plaintiffs should have been more diligent in seeking to amend their pleadings once they learned of Cinnamo.  Yet, the Court has already determined that case considerations warrant permitting this amendment under Rule 16(b)'s more stringent diligence inquiry.  Unlike Rule 16, an evaluation of undue delay under Rule 15

considers "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson,* 902 F.2d at 1387; *see also Eminence Capital*, 316 F.3d at 1052. It is evident that Plaintiffs did not know of Cinnamo and his alleged role until June 2018, well after the filing of the original *Cervantes* complaint and a month after the filing of the Third Amended Complaint. Defendants—while claiming undue delay—represent that they too did not know of Cinnamo's role until June 2018. (ECF No. 75 at 2.) Under these circumstances, the Court does not find that the *Cervantes* Plaintiffs have unduly delayed seeking to add Cinnamo as a defendant under Rule 15(a). Defendants' argument that Pease delayed seeking to name Cinnamo is also not well-taken. Pease brought his claims in May 2018. Given the timing of the disclosure regarding Cinnamo, Pease also would not have known about Cinnamo until a month after he filed his complaint. Thus, the Court similarly rejects Defendants' Rule 15(a) delay argument for Pease.

Defendants' argument that Pease delayed seeking to name Radasa as a defendant is perhaps stronger because it appears that at least some discovery in *Cervantes* to which Pease had access should have made Pease aware of Radasa's alleged role in his arrest. Plaintiffs acknowledge that Defendants' initial disclosures indicated that Radasa was mentioned in Pease's arrest report. (ECF No. 77 at 13.) But even if Pease delayed seeking to name Radasa, "[d]elay alone—no matter how lengthy—is an insufficient ground for denial of leave to amend." *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981); *Hurn v. Ret. Fund Tr. of Plumbing*, 648 F.2d 1252, 1254 (9th Cir. 1981). Defendants do not assert any other arguments for Radasa and accordingly the Court cannot find that permitting Pease to add him as a defendant is improper.

17cv1230

### b. Undue Case Delay by Permitting Amendments

A court should consider whether "permitting an amendment would . . . produce an undue delay in the litigation." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990). As an initial matter, Defendants argue that amendment contravenes the reasons why this Court consolidated *Cervantes* and *Pease* because it will cause delays from reopening discovery. (ECF No. 75 at 6.) The Court has already rejected this delay argument.

Defendants also suggest that the case will be delayed because they should have the right to challenge the sufficiency of personal liability in a Rule 12(b)(6) motion. (ECF No. 75 at 6.) The Court does not agree that the individual liability amendment will reset the case such that all individual Defendants can once more move to dismiss. In particular, the City Defendants had notice of the personal liability nature of the claims against the individual defendants by expressly treating the claims as such. Rather than move to dismiss under Rule 12(b)(6), the City Defendants have asserted qualified immunity in all answers to the *Cervantes* and *Pease* complaints. (ECF No. 5 at 15 (City and Zimmerman's Answer to FAC); ECF No. 28 at 20 (City and Zimmerman's Answer to SAC); ECF No. 34 at 21 (Answer to SAC by City Defendant officers); ECF No. 41 at 19 (Answer to TAC by City, Zimmerman, and all City Defendant officers); *Pease*, ECF No. 3 at 7 (Answer by City, Zimmerman, and City Defendant officers).) Thus, there is no new opportunity for these Defendants to move to dismiss pursuant to Rule 12(b)(6).

As for the County Defendants, Gore drew on the personal liability standard in his motion to dismiss the *Cervantes* claims and the PFAC contains similar allegations insofar as direct violations are concerned. (ECF No. 31.) The Court observes that the County and Gore have already answered the *Cervantes* complaint after the Plaintiffs amended in response to the Court's last dismissal order and these

Defendants have answered the *Pease* complaint after the Court's dismissal order in that case. (ECF No. 42; *Pease*, ECF No. 15.) The Court acknowledges that there may be a need for additional dispositive motions insofar as it concerns claims against Cinnamo, who has not been a party to the litigation. The allegation that Gore delegated final policymaking authority to Cinnamo also changes the contours of the *Monell* claim alleged against the County. (PFAC ¶¶ 61–64.) But the potential need to file additional dispositive motions on these issues cannot alone serve as a reason to deny leave to amend. *See Macias v. City of Clovis*, No. 1:13-cv-01819-BAM, 2016 WL 8730687, at *5 (E.D. Cal. Apr. 8, 2016). This is particularly true given that Rule 15 favors decisions on the merits. *See Eldridge*, 832 F.2d at 1135; *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) ("A court must [also] be guided by the underlying purpose of Rule 15—to facilitate decisions on the merits rather than on the pleadings or technicalities.").

Finally, the Court also raises an undue delay issue that no party has addressed. The proposed individual capacity amendment simply removes the allegation that the individual officers are named in their official capacity without in turn expressly naming the officers in their individual capacity. Although the Court has applied the course-of-the-proceedings rule to find that Defendants understood the claims to be raised against defendant officers in their individual capacity as well, the Court is mindful that allegations of individual capacity should be clearly stated. The general rule is that individual defendants in a Section 1983 action are sued in their official capacities unless the complaint explicitly states otherwise. *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989); *Nix v. Norman*, 879 F.2d 429 (8th Cir. 1989); *Kolar v. Cty. of Sangamon*, 756 F.2d 564, 568 (7th Cir. 1985). To avoid confusion and delay at a later stage of the litigation, the Court believes that absolute clarity is required. Plaintiffs may not simply remove the official capacity allegation, but rather must expressly state the individual officers are sued in their individual capacity if they

intend to make the proposed individual capacity amendment at all.

### 3. Bad Faith

Defendants argue that Plaintiffs seek to add Cinnamo as a defendant in bad faith because Plaintiffs' new allegations regarding Cinnamo are not supported by Cinnamo's or Boudreau's deposition testimony or any other evidence in the record. (ECF No. 75 at 8–9.) The Court rejects this argument.

A motion to amend is made in bad faith when there is "evidence in the record which would indicate a wrongful motive" on the part of the litigant requesting leave to amend. *DCD Programs*, 833 F.2d at 187; *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) ("In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt." (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006))). Bad faith exists when the plaintiff "merely is seeking to prolong the litigation by adding new but baseless legal theories." *Griggs*, 170 F.3d at 881. Courts find bad faith when leave to amend is sought to destroy a federal court's diversity jurisdiction or when the same claims for which leave to amend is sought were denied in a related action. *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987); *Bonin v. Vasquez*, 807 F. Supp. 586, 587 (C.D. Cal. 1992).

The Court does not understand why Defendants challenge the addition of Cinnamo on the basis of bad faith because there is scant "evidence in the record which would indicate a wrongful motive[.]" *DCD Programs*, 833 F.2d at 187. The deposition testimony Defendants have provided the Court shows that Cinnamo admittedly was "the sheriff's agency liaison for the San Diego PD" on the day of the Trump rally who "was responsible for all the sheriff's personal that were assigned to that event, and was in communication with the incident command staff from San

Diego PD" and monitored the activities of Sheriff's deputies in the field. (Cinnamo Dep. at 18:12–19, 20:21–25.) This is precisely the conduct alleged in the PFAC. Cinnamo is therefore properly identified as a County Defendant for the County conduct Plaintiffs allege and challenge.

To the extent Defendants' bad faith arguments are actually arguments that Cinnamo would be prejudiced by being named as a defendant, the Court rejects that argument as well. Amending a complaint to add a new defendant may present a threat of prejudice to the party. *DCD Programs*, 833 F.2d at 186. But a new defendant who is already a related party and has in fact been deposed in the case undermines claims of prejudice. *Zoe Mktg. v. Impressons, LLC*, No. 14cv1881 AJB (WVG), 2015 WL 12216341, at *4 (S.D. Cal. June 1, 2015). Cinnamo had notice that he could potentially be a defendant in this litigation since his deposition in August 2018. Given that he has already been deposed because the County willingly made him available for deposition, he faces no substantial prejudice from discovery.

Ultimately, what Defendants label as "bad faith" in the proposed Cinnamo amendments is a disguised merits-based argument that "Plaintiffs continue to pursue liability against the County and its Sheriff's personnel, despite knowing full well-that no evidence supports a theory of recovery against these defendants under either the First or Fourth Amendments, as pled." (ECF No. 75 at 9.) These arguments are more appropriately raised at the motion for summary judgment stage. The Court will not make merits determinations, particularly when the only thing at stake in the present motion is what Plaintiffs may allege, not whether Cinnamo, Gore, or the County are ultimately liable.

### 4. Futility

As a final matter, the Court addresses futility. "Futility of amendment can, by

itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

### a. First Amendment and Discrimination Allegations for *Pease*

The PFAC's proposed amendments of First Amendment viewpoint discrimination and press/non-press discrimination in arrests—allegations which remain only for Pease—are futile. As the Court has already noted, the amendments are barebone allegations. The PFAC contains no factual allegations which connect the proposed First Amendment viewpoint discrimination and press/non-press discrimination amendments to Pease or his arrest. As such, the proposed amendments are plainly legally insufficient and would not withstand a motion to dismiss.[11] A proposed amendment is futile, if it cannot withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Nordyke v. King*, 644 F.3d 776, 788 n.12 (9th Cir. 2011) (citing *Miller v. Rykoff-Sexton, Inc*., 845 F.2d 209, 214 (9th Cir. 1988)), *reh'g en banc Nordyke v. King*, 681 F.3d 1041 (9th Cir. 2012). Accordingly, the Court denies Pease leave to amend for these proposed amendments and no Plaintiff has leave for these amendments.

### b. Officer Cinnamo Amendments

The final issue for the Court is whether the addition of Cinnamo as a defendant

---

[11] Pease also unduly delayed seeking amendments regarding First Amendment viewpoint discrimination and press/non-press discrimination in arrests. Amendment may be denied when a plaintiff has been "aware of the facts and theories supporting amendment since the inception of the action." *See Quezada v. City of L.A.*, No. 2:15-07382-ODW (PJWx), No. 2:15-07382-ODW (PJWx), 2018 WL 4378661, at *2 (C.D. Cal. Sept. 13, 2018). Pease, as counsel for the *Cervantes* Plaintiffs and as a participant in the Trump rally protests, has been aware of the facts that would support these claims since he brought the initial *Cervantes* suit. Yet, at no point, including when he filed his own lawsuit, did Pease raise these claims. The fact that the proposed amendments are so undeveloped although the rally occurred nearly 3 years ago and the first case was brought almost 2 years ago confirms for the Court that leave is not proper even as to Pease. The Court will not permit amendment as an opportunity to raise new undeveloped claims and theories on what appears to be a whim.

would be futile.  Amendment is futile if the statute of limitations would bar the proposed claims.  *See Sackett v. Beaman*, 399 F.2d 884, 892 (9th Cir. 1968) (affirming denial of motion for leave to amend because statute of limitations rendered claim futile); *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000).  Although Defendants do not challenge the addition of Cinnamo as a defendant on this basis, Plaintiffs have raised the issue and the Court will therefore address it.

The only proposed claims against are Cinnamo are Section 1983 claims.  Section 1983 claims do not have their own statute of limitations but instead borrow the personal injury statute of limitations of the forum state, as well as the forum state's law with respect to tolling and relation back.  *See Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014) (citing, *inter alia*, *Wilson v. Garcia*, 471 U.S. 261, 279–80 (1985) and *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir. 2007)).  California's statute of limitations for personal injury actions is two years.  Cal. Code Civ. Proc. § 335.1.  Plaintiffs acknowledge that this is the appropriate statute of limitations.  (ECF No. 71 at 14.)

A Section 1983 claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the cause of action."  *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996) (internal quotation marks and citation omitted).  Because the Trump rally occurred on May 27, 2016, Plaintiffs had until May 29, 2018 to raise Section 1983 claims against Defendant Cinnamo when computing time in accordance with Rule 6.[12]  *See* Fed. R. Civ. P. 6(a).  The *Cervantes* TAC filed on May 7, 2018,

---

[12] As a technical matter, May 27, 2018 would have been the two-year mark.  However, May 27, 2018 was a Sunday.  The following day was the legal observance for Memorial Day.  Pursuant to Rule 6(a), "[i]n computing any period of time prescribed or allowed by these rules, . . . the last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday[.]"  Since the last day of the two-year California statute of limitations fell on a Sunday and the following day fell on a legal holiday, these days are not counted.  *See Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002) (applying Rule 6(a) in computing time period for borrowed state

however, does not name Cinnamo.  (ECF No. 38.)  Pease's complaint filed on May 29, 2018—the last timely day for Pease to file Section 1983 claims—also does not name Cinnamo as a defendant.[13]  (ECF No. 1.)  The present motion for leave to amend comes after expiration of the statute of limitations for both *Pease* and *Cervantes*.  Thus, the proposed claims against Cinnamo in the PFAC are futile for being time-barred for all Plaintiffs unless some rule permits the Plaintiffs to interpose the claims now.  Plaintiffs point the Court to Rule 15(c).  (ECF No. 71 at 14–21.)

Pursuant to Rule 15(c), a claim asserted against a defendant after the statute of limitations has expired will, in certain circumstances, relate back to the filing of a prior timely complaint and thus be deemed timely as well.  Fed. R. Civ. P. 15(c)(1).  Under Rule 15(c)(1), "[a]n amendment to a pleading relates back to the date of the original pleading when":

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the

---

law statute of limitations in Section 1983 case).

[13] Pease's Section 1983 claims were timely filed on May 29, 2018.  A case commences when it is filed in federal court.  Fed. R. Civ. P. 3.  But Rule 6(a)'s computation rules govern which days are counted for the purposes of Rule 3.  *See Sain*, 309 F.3d at 1138 (finding Section 1983 lawsuit timely filed within two-year statute of limitations under Oregon law by applying Rules 3 and 6(a) of the Federal Rules of Civil Procedure); *Lewis v. Olafson*, No. 08-1163-KI, 2009 WL 11303393 (D. Or. May 6, 2009) (applying Rule 6 to find amended complaint timely filed within statute of limitations).  Because May 27 and May 28, 2018 are not counted as the Court has discussed, Pease's case was timely when filed.  The Court observes that the County and Gore initially moved to dismiss Pease's complaint as time-barred but abandoned this argument after Pease presented arguments for why his complaint is not time-barred.  (*Pease*, ECF Nos. 4, 8, 9.)

summons and complaint, the party to be brought in by amendment:

> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

The Rule thus sets forth federal rules for relation back of amendments under subsections (B) and (C), but also permits relation back under a state rule pursuant to subsection (A). A court must "consider both federal and state law and employ whichever affords the 'more permissive' relation back standard." *Butler*, 766 F.3d at 1201. The choice between the rules is a "one-way ratchet," such that a party "is entitled to invoke the more permissive rule whether that is the state rule or the federal rule set out in Rule 15(c)(1)(C)." *Coons v. Indus. Knife Co.*, 620 F.3d 38, 42 (1st Cir. 2010).

The Court separately analyzes relation back for *Cervantes* and *Pease* given that relation back under Rule 15(c) does not apply to consolidated cases. *See Twaddle v. Diem*, 200 Fed. App'x 435, 438 n.4 (6th Cir. 2006) (unpublished) ("Consolidation would not raise the prospect of relation back because consolidation does not merge the suits into a single action, change the rights of the parties, or make parties in one suit parties in the other." (citation omitted)); *Bailey v. N. Ind. Pub. Serv. Co.*, 910 F.2d 406, 413 (7th Cir. 1990) (holding Rule 15(c) inapplicable because the claim at issue "was not contained in an amended pleading in Suit 1 but in a second, separate complaint" and noting that the mere fact that the suits were consolidated for trial did not make the second suit an amendment to the first); *Bamberg v. SG Cowen*, 236 F. Supp. 2d 79, 86 (D. Mass. 2002) ("A complaint that would be time-barred if it were being tried alone cannot be resuscitated by dint of its consolidation with another

case."); *Morin v. Trupin*, 778 F. Supp. 711, 733 (S.D.N.Y. 1991) (holding relation back was not apposite since the case involved a consolidation rather than an amendment of the original pleadings to add new plaintiff). Thus, for Pease, the Cinnamo amendments must separately relate back to his own pleading, not the original *Cervantes* pleadings.

### i. *Cervantes*

For *Cervantes*, the California state law rule for relation back is more permissive and allows relation back of the Cinnamo amendments to the earlier-filed timely pleadings. California Code of Civil Procedure Section 473(a)(1), which governs amendment of pleadings, does not expressly permit relation back of amendments. *See* Cal. Civ. Code. P. § 473(a)(1). However, "whe[n] an amendment does not add a 'new' defendant, but simply corrects a misnomer by which an 'old' defendant was sued, case law recognizes an exception to the general rule of no relation back." *Hawkins v. Pac. Coast Bldg. Prods., Inc.*, 22 Cal. Rptr. 3d 453, 457 (Cal. Ct. App. 2004) (citation omitted). Pursuant to California Code of Civil Procedure Section 474, a plaintiff who names a Doe defendant in his complaint and alleges that the defendant's true name is unknown has three years from the commencement of the action in which to discover the identity of the Doe defendant, to amend the complaint accordingly, and to effect service of the complaint. Cal. Code Civ. P. § 474; *Lindley v. General Elec. Co.*, 780 F.2d 797, 799 (9th Cir. 1986). A plaintiff must have been genuinely ignorant of the true name of the defendant at the time of filing the earlier pleading and the plaintiff must seek amendment once learning of the Doe defendant's true identity. *Butler*, 766 F.3d at 1202 (citing *Woo v. Superior Court*, 89 Cal. Rptr. 2d 20, 25 (Cal. Ct. App. 1999)).

Courts apply Section 474 to allow a plaintiff to substitute a fictional "Doe" defendant in Section 1983 suits. *See Klamut v. Cal. Highway* Patrol, No. 15-cv-

– 40 –

02132-MEJ, 2015 WL 9024479, at *5 (N.D. Cal. Dec. 16, 2015) (applying Section 474 in Section 1983 case with Doe defendants).; *McCloud v. Farrow*, No. 2:13-cv-02404-JAM-KJN, 2014 WL 6390288, at *3 (E.D. Cal. Nov. 14, 2014) (same). The Court finds it appropriate to apply Section 474 here. The *Cervantes* Plaintiffs named San Diego County Sheriff's Deputy Doe Defendants in each complaint and expressly assert ignorance of their true identities. (ECF No. 1 ¶ 15 (original complaint); FAC ¶¶ 26–32; SAC ¶¶ 57–63; TAC ¶¶ 57–58.) The record is clear that Plaintiffs—and even the County—were genuinely ignorant of Cinnamo's role for the County on the day of the Trump rally until June 2018, after each of the previous pleadings were filed. The *Cervantes* Plaintiffs learned of Cinnamo's identity and sought to add him as a defendant within three years of filing the original pleading in June 2016. So long as the *Cervantes* Plaintiffs effect service on Cinnamo by June 16, 2019, his amendments will be timely. Thus, the Court finds that Section 474 permits the *Cervantes* Plaintiffs to substitute Cinnamo for one of the fictitious Doe Defendants, with the *Cervantes* Plaintiffs' Section 1983 claims against Cinnamo relating back to the timely-filed original pleading. *See Klamut*, 2015 WL 9024479, at *5 (noting that "if [p]laintiff's amendment relates back under California law, it will relate back pursuant to Rule 15(c) despite the fact a different outcome would result if based solely on the federal rules."); *McCloud*, 2014 WL 6390288, at *3 (same). Thus, the Cinnamo amendments are not futile for the *Cervantes* Plaintiffs.

### ii. *Pease*

For *Pease*, the Court finds that federal relation back rules are more readily permissive. Plaintiffs seek to substitute Cinnamo in place of Boudreau on the basis of mistaken identity pursuant to Rule 15(c)(1)(C). "In order for an amended complaint to relate back under Rule 15(c)(1)(C), the following conditions must be met: '(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not

be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it.'" *Butler*, 766 F.3d at 1202 (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)).  The second and third requirements must have been fulfilled within the time period prescribed by Federal Rule of Civil Procedure 4(m).  *Id.*  Rule 4(m) establishes a 90-day period. Fed. R. Civ. P. 4(m).  Here, 90 days from the filing of the original *Pease* pleading was August 27, 2018.  Thus, this is the appropriate date by which the second and third requirements must have been satisfied.

Defendants do not advance any arguments disputing relation back for *Pease*. There is no question that the first requirement is met because the claims against Cinnamo arise out of the same conduct alleged in the original *Pease* complaint, specifically the alleged coordination between SDPD and SDSD on the day of the Trump rally.  The second requirement is also satisfied.  Cinnamo received notice sometime between June 20, 2018 and August 20, 2018 given that the County decided to make him available for deposition on August 20, 2018.  In any event, Cinnamo received notice within the period prescribed by Rule 4(m).  Finally, the Court finds that Cinnamo should have known that he would have been named instead of Boudreau were it not for mistaken identity.  Pease filed his complaint a week after the May 21, 2018 meet and confer with the County, during which the County told Pease that Boudreau was in charge for the County on the day of the rally.  (ECF No. 71 at 10; Pease Decl. ¶ 6; *see also Pease*, ECF No. 1.)  The naming of Boudreau in *Pease* was clearly premised on the County's representation.  Defendants acknowledge that, like all Plaintiffs, even they did not know about Cinnamo's role until June 20, 2018—after the statute of limitations had expired.  Cinnamo was deposed precisely because the County had initially identified the wrong person, who in turn correctly identified Cinnamo.  These facts confirm that Cinnamo would have been named in *Pease* instead of Boudreau were it not for a mistake.  Accordingly, the

Court finds that Pease's substitution of Cinnamo in place of Boudreau is not futile. Such amendment will be timely because the amendments relate back to the original timely-filed *Pease* complaint pursuant to Rule 15(c)(1)(C).

## CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' motion for leave to file the PFAC as follows:

1. Plaintiffs are **GRANTED LEAVE** to file a consolidated complaint in the lead case.

2. The *Cervantes* Plaintiffs are **GRANTED LEAVE** to include in the consolidated pleading the proposed amendments for Cinnamo, individual capacity, and changes to the named Plaintiffs and Defendants based on the dismissals the Court has previously granted. The *Cervantes* Plaintiffs are **DENIED LEAVE** for all other proposed amendments the Court has expressly rejected and may not include such proposed amendments in the consolidated complaint.

3. Pease is **GRANTED LEAVE** to include in the consolidated pleading the proposed amendments for Radasa, Cinnamo, and individual capacity.

4. Plaintiffs may file a Fourth Amended Complaint which complies with this Order **no later than March 29, 2019.** Amendments which apply only to certain Plaintiffs as a result of this order shall be clearly designated as such.

5. The Court advises that further Rule 15(a) requests to amend from any Plaintiff are strongly discouraged.

**IT IS SO ORDERED.**
**DATED:  March 12, 2019**

**Hon. Cynthia Bashant**
**United States District Judge**