# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIRO CERVANTES, *et al.*, | CONSOLIDATED ACTIONS: |
| Plaintiffs, | Case No. 17-cv-1230-BAS-NLS |
| | Case No. 18-cv-1062-BAS-NLS |
| v. | **ORDER:** |
| SAN DIEGO POLICE CHIEF SHELLEY ZIMMERMAN, *et al.*, | **(1) GRANTING IN PART AND DENYING IN PART THE COUNTY DEFENDANTS' MOTION TO DISMISS [ECF No. 97]** |
| Defendants. | |
| BRYAN PEASE, | **AND** |
| Plaintiff, | **(2) DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIFTH AMENDED COMPLAINT [ECF No. 110]** |
| v. | |
| SAN DIEGO COUNTY SHERIFF WILLIAM GORE, *et al.*, | |
| Defendants. | |

These consolidated cases stem from protests in connection with a May 27, 2016 rally by then-presidential candidate Donald Trump at the San Diego Convention Center. The City of San Diego ("the City")—through San Diego Police Department ("SDPD") Chief Shelley Zimmerman and various SDPD officers—and the County of San Diego ("the County")—through Sheriff William Gore of the San Diego Sheriff's Department and various San Diego Sheriff's Officers ("SDSO")—allegedly had a plan to and did violate the First Amendment and Fourth Amendment rights of certain protesters by declaring an

unlawful assembly, forcing the protestors to march for over a mile, and then subsequently arresting and detaining them. Plaintiffs Jairo Cervantes, Madison Goodman, Nancy Sanchez, and Brandon Steinberg are plaintiffs in the *Cervantes* case (the "*Cervantes* Plaintiffs") and Plaintiff Bryan Pease is the plaintiff in the *Pease* case, collectively the "Plaintiffs." The Court permitted Plaintiffs to file a Fourth Amended Complaint ("4AC") on March 29, 2019, (ECF No. 85), which Plaintiffs timely filed, (ECF No. 89).

The County, Sheriff Gore, and Captain Charles Cinnamo (the "County Defendants") move to dismiss the 4AC for failure to state a claim against the County Defendants pursuant to Rule 12(b)(6). (ECF No. 97, 105.) Plaintiffs oppose. (ECF No. 101.) After the completion of briefing on the County Defendants' motion to dismiss, Plaintiffs moved for leave to file a proposed Fifth Amended Complaint to make changes that among other things would directly affect Plaintiffs' claims against the City Defendants. (ECF No. 110, 118.) The City Defendants oppose. (EFC No. 116.) For the reasons herein, the Court (1) grants in part and denies in part the County Defendants' motion to dismiss, and (2) denies Plaintiffs' motion for leave to amend.

## BACKGROUND[1]

### A. Relevant Factual Background

On May 27, 2016, then-presidential candidate Donald Trump held a political rally at the San Diego Convention Center, sparking large, day-long protests. (4AC ¶ 30.) Allegedly, "[a]t some point," the Defendants declared the assembly unlawful. (*Id*. ¶ 32.) Sheriff's deputies "cordoned off" side streets and "actively pushed [protesters] back with wooden batons." (*Id*. ¶ 33.) Other Sheriff's deputies assisted SDPD officers in marching

---

[1] All docket references are to the designated lead case unless otherwise specified. The Court does not recount the portions of the factual allegations and procedural background already discussed in the prior dismissal orders. (*See* ECF No. 37; ECF 85; *Pease*, ECF No. 11.)

protesters over a mile and arresting "anyone who happened to be in their way, including [the *Cervantes*] Plaintiffs." (*Id*. ¶ 34.) Pease was not present at the Convention Center, but "was almost a mile" away at the time of his arrest. (*Id*. ¶¶ 81, 83-3.) Pease "was walking backwards at the same rate as the line of advancing police and [S]heriff's deputies while filming them," when he "was tackled by a team of officers that rushed from behind the line of marching police and deputies." (*Id*. ¶¶ 83, 83-3.)[2] Although SDPD officers arrested Plaintiffs, (*id*. ¶¶ 26, 28, 83-6, 83-7), Plaintiffs allege that Sherriff's deputies provided "support and backup" for the arrests, (*id*. ¶ 8). Allegedly, Sheriff's deputies took custody of the arrested Plaintiffs, including Pease, and held them for "ten hours," first "for hours at the confinement center [Sheriff's deputies] had set up for this purpose before transferring them to the county jail, where they held everyone for several more hours, releasing them around 5:00 a.m. the next day." (*Id*. ¶¶ 12, 44, 49.)

Plaintiffs now allege that Captain Cinnamo was "in top command of SDSO participation in the event[,]" was "present in the command center[,]" and ordered Sheriff's deputies to cordon off the streets and assist in marching and arresting protesters. (*Id*. ¶¶ 6–8.) They further allege that Sheriff Gore, as a final policymaker "for decisions of the San Diego Sheriff's Department," "ratified" the pre-planned operation as well as "delegated his final policymaking authority to Cinnamo to make such decisions for the County [] on the day of the event from the command center." (*Id*. ¶¶ 42–44.) Finally, Plaintiffs allege that the County and the City conspired together to violate Plaintiffs' First and Fourth Amendment rights by planning the operation which took place on May 27, 2016. (*Id*. ¶ 41.)

---

[2] The 4AC appears to contain several scrivener's errors in the numbering of allegation paragraphs beyond paragraph 83. The Court therefore refers to the paragraphs after paragraph 83 as "83-X" as appropriate.

**B.    Relevant Procedural Background**

On June 16, 2017, ten plaintiffs initially filed suit in *Cervantes* against various City and County Defendants.  (ECF No. 1.)  Bryan Pease, who has represented the *Cervantes* Plaintiffs since that lawsuit's inception, filed his own case on May 29, 2018.  (*Pease*, ECF No. 1.)  In December 2018, the Court ordered consolidation of *Cervantes* and *Pease*.  (ECF No. 68.)  The Court has allowed Plaintiffs multiple opportunities to amend their pleadings.  (*See* ECF Nos. 22, 37, 71.)   Four *Cervantes* Plaintiffs remain after various voluntary dismissals by Plaintiffs.  (ECF Nos. 35, 56.)

The County Defendants' present motion to dismiss, filed on April 12, 2019, is not the first time the Court has considered a dismissal challenge from the County.  In April 2018, the Court previously considered and granted a motion to dismiss filed by the County and Sheriff Gore, (ECF No. 37), pursuant to which Plaintiffs, through Pease, filed a Third Amended Complaint ("TAC") on May 7, 2018, (ECF No. 38), just weeks before Pease filed his case.  The purpose behind

Most recently, in December 2018, Plaintiffs requested leave to file the operative 4AC on the ground that discovery developments required several amendments, particularly with respect to Plaintiffs' allegations against the County Defendants.  (ECF No. 71.)  Largely rejecting the County Defendants' opposition to amendment, (ECF No. 75-1), the Court granted Plaintiffs partial leave to amend and file the 4AC, (ECF No. 85).  Among other changes, the 4AC adds Cinnamo as a named defendant in both his official and personal capacity, (4AC ¶ 25), and expressly names Sherriff Gore in his personal capacity, (*id.* ¶ 24).  Along with the addition of Cinnamo, the 4AC alters the theories underlying Plaintiffs' Section 1983 *Monell* claims against the County.  (*Compare* TAC ¶ 73 *with* 4AC ¶¶ 42–44.)  The County Defendants once more move to dismiss all claims Plaintiffs raise against them.  (ECF No. 97.)  Plaintiffs oppose Defendants' motion and ask that the Court grant further leave to amend if the Court finds that Plaintiffs have not pleaded sufficient

- 4 -

facts to survive dismissal.[3]  (ECF No. 101 at 15:1–4.)

On June 7, 2019, Plaintiffs moved for leave to file the proposed Fifth Amended Complaint.  (ECF No. 110.)  Plaintiffs seek to add Lieutenant Christian Sharp, Lieutenant Adam Sharki, and Captain Richard Freedman as three new City Defendants in their official and personal capacities.  (ECF No. 110-3 at 4:5–8.)  Aside from these substantive changes, Plaintiffs seek to drop Officer Maraschiello as a defendant and to correct Defendant Radasa's first name in the 4AC.  At the time Plaintiffs filed their motion to amend, the deadline to file motions for summary judgment was June 28, 2019.  (ECF No. 74 ¶ 8.)  The deadline was vacated in order to resolve the motion to dismiss and motion for leave to amend.  (ECF No. 114.)  The Court turns to the merits of the pending motions.

## THE COUNTY DEFENDANTS' MOTION TO DISMISS

Plaintiffs' only claims against the County Defendants are raised under 42 U.S.C. § 1983.  To state a Section 1983 claim, Plaintiffs must plausibly allege that: (1) the defendant acted under color of state law at the time the defendant committed the challenged conduct; and (2) the defendant's conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  42 U.S.C. §1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  Plaintiffs' 4AC sets out new factual allegations for Plaintiffs' Section 1983 claims against the County Defendants in their individual

---

[3] Plaintiffs request leave to incorporate evidence that they did not include in their complaint but that they cite to oppose the County Defendants' motion to dismiss.  (ECF No. 101 at 3:7–5:19, 14:27–15:4; ECF No. 101-1).  As an initial matter, none of Plaintiffs' evidentiary averments are proper at this juncture because a motion to dismiss is decided on the pleadings.  Although Rule 12(d) permits a court to consider matters outside the pleadings, a court may only do so by converting a Rule 12(b)(6) motion to a Rule 56 motion for summary judgment.  Fed. R. Civ. P. 12(d).  The Court declines to do so here.  In any event, Plaintiffs' request is moot to the extent the Court denies the County Defendants' motion.  To the extent the Court grants the County Defendants' motion, the Court finds further amendment is unwarranted because Plaintiffs have already amended their pleadings multiple times.

capacities, and new theories of Section 1983 liability against the County. (*Compare* TAC ¶ 73 *with* 4AC ¶¶ 42–44.) Plaintiffs' claims against the County Defendants now hinge on the alleged role that Captain Cinnamo played in the May 27, 2016 operation, and on the relationship between Sheriff Gore and Cinnamo. (4AC ¶¶ 6–8, 42–44.) Plaintiffs allege that Sheriff Gore delegated final policymaking authority to Cinnamo, who in turn acted on the County's behalf on the day of Plaintiffs' alleged arrests and detention. (*Id.* ¶ 44.) Plaintiffs further allege that Sheriff Gore, as the final policymaker of the Sheriff's Department, ratified the "pre-planned operation." (*Id.* ¶ 43.)

The County Defendants argue that Plaintiffs fail to state Section 1983 claims against the County and the individual County Defendants. (ECF No. 97.) Specifically, the County Defendants contend that: (1) Plaintiffs fail to allege that the County Defendants committed a constitutional violation for allegedly detaining Plaintiffs without probable cause for ten hours, (2) Plaintiffs have not pleaded facts to show that the County is subject to Section 1983 *Monell* liability under a delegation or ratification theory, and (3) Plaintiffs have not established a causal connection between Sheriff Gore and Cinnamo's alleged actions and the claimed constitutional violations necessary to sustain Section 1983 claims against these Defendants in their personal capacity. Although the Court agrees with the County Defendants' first argument, the Court rejects the County Defendants' second and third arguments.

## A. Legal Standard

Under Rule 12(b)(6), the Court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, the court must accept the complaint's allegations as true. *Erickson v. Pardus*, 551 U.S. 89 (2007). A complaint must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). "[T]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3 (internal citations and quotations omitted). A pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*

## B.    Discussion

### 1.    Alleged Constitutional Violations

The Court turns first to the County Defendants' contention that Plaintiffs have not alleged any constitutional violations that can form the basis for Section 1983 liability against the County or the individual County Defendants. "The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker v. McCollan*, 443 U.S. 137, 140 (1979).

Without differentiation, Plaintiffs allege that two series of acts constitute violations of their "First and Fourth Amendment rights": (1) the "forced march" of Plaintiffs from the Convention Center to Barrio Logan and the "unlawful arrests" of Plaintiffs, following the declaration of an unlawful assembly, and (2) the ten-hour post-arrest "jailing" of Plaintiffs "without probable cause" at "the confinement center [Sheriff's deputies] had set up for this purpose" and "the county jail[.]" (4AC ¶¶ 9–12, 41, 44, 48–49.)[4] The County Defendants do not dispute that Plaintiffs sufficiently allege constitutional violations for the

---

[4] Plaintiffs state that they "are not directly challenging the decision to declare an unlawful assembly as 'unwarranted.'" (ECF 101 at 14:1–2.) Instead, their claims concern alleged deprivations that took place after the assembly was declared unlawful and the crowd had begun to disperse. (*Id.* at 14:8–14.)

first series of acts.[5]

The County Defendants, however, move to dismiss any Section 1983 claim for an alleged Fourth Amendment violation in Plaintiffs' ten-hour post-arrest "jailing" by SDSOs. Relying on *Rivera v. City of Los Angeles*, 745 F.3d 384 (9th Cir. 2014), the County Defendants argue that Plaintiffs have not pleaded a constitutional violation for the alleged "post-arrest incarcerations" because Plaintiffs cannot bring a claim under the Fourth Amendment against jailors for such conduct but must instead rely on the Fourteenth Amendment Due Process Clause. (ECF No. 97-1 at 6:10–13.) The Court disagrees.

As an initial matter, to the extent the County Defendants argue that a mere failure to cite the correct constitutional amendment warrants dismissal of Plaintiffs' Section 1983 claims, the Court squarely rejects this argument. Even when a plaintiff fails to cite the correct law or statute by which to assess or interpret the plaintiff's allegations, "specifying an incorrect [legal] theory is not fatal." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). As this Court has observed elsewhere, "the focus of the Federal Rules is on whether the factual allegations of the Complaint—not the precise pleading of a specific statute or law—provide [the defendant] with fair notice of the claims asserted against it." *Yeiser Res. & Dev. LLC v. Teknor Apex Co.*, 281 F. Supp. 3d 1021, 1037 (S.D. Cal. 2017). For this reason, "[t]he failure in a complaint to cite a statute [or constitutional provision], or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters." *Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988). Thus, the Court rejects the

---

[5] The County Defendants, however, do challenge whether the allegations regarding their role in the "forced march" and Plaintiffs' arrests are sufficient for Section 1983 liability. (ECF No. 97-1 at 5:7–24.) The Court considers the County Defendants' "role" arguments in the Court's *Monell* liability analysis.

- 8 -

County Defendants' apparent belief that any Section 1983 claim would necessarily be subject to dismissal for a purported failure to identify the correct constitutional provision.

More fundamentally, the Court rejects the County Defendants' argument that, as a matter of law "constitutional challenges to post-arrest incarcerations brought against jailors. . . lie under the Fourteenth Amendment's Due Process Clause, and not the Fourth Amendment." (ECF No. 97-1 at 6 (citing *Rivera*, 745 F.3d at 389–90).) The County Defendants' argument misconstrues applicable law. *Rivera*'s statement that "post-arrest incarceration is analyzed under the Fourteenth Amendment alone," applies when a plaintiff is arrested pursuant to a constitutionally valid warrant or, at the very least, a warrant whose validity the plaintiff does not challenge. *See Rivera*, 745 F.3d at 389; *see also Baker*, 443 U.S. at 143–44 (observing that "respondent was arrested pursuant to a facially valid warrant" that conformed "to the requirements of the Fourth Amendment.").

However, the Fourth Amendment is the proper constitutional provision under which to challenge post-arrest detention without probable cause. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) ("This Court decided some four decades ago that a claim challenging pretrial detention fell within the scope of the Fourth Amendment." (relying on *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975) for this proposition). "When a person is arrested without the benefit of a warrant supported by probable cause, the Fourth Amendment requires a judicial determination of probable cause to occur 'promptly' after their arrest" to justify the detention. *Jones v. City of Santa Monica*, 382 F.3d 1052, 1055 (9th Cir. 2004) (citing *Gerstein*, 420 U.S. at 125); *see also Brainerd v. Cty. of Lake*, 357 Fed. App'x 88, 90 (9th Cir. 2009) ("[I]n the case of a warrantless arrest," "[t]he Fourth Amendment requires that . . . the government must promptly obtain a fair and reliable determination of probable cause by a judicial officer.").

In the context of a Fourth Amendment challenge to detention without probable cause, "[a] 'judicial determination [] of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). An alleged detention lasting less than 48 hours without a probable cause determination may violate the Fourth Amendment "if the arrested individual can prove that his or her probable cause determination was delayed unreasonably[.]" *Id.* at 56 (identifying as "[e]xamples of unreasonable delay" "delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake."). But "unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities" do not rise to this level. *Id.* at 57.

Because Plaintiffs allege that they were arrested without a warrant and without probable cause, their challenge may be properly brought under the Fourth Amendment. Nevertheless, Plaintiffs' factual allegations do not rise to the level of a Fourth Amendment violation based solely on the length of their detention.

Plaintiffs' alleged post-arrest detention in the custody of the Sheriff's Department officials lasted at most for "ten hours," spanning an initial detention "for hours at the confinement center" and a detention at "the county jail" "for several more hours" from which Plaintiffs were "releas[ed] . . . around 5:00 a.m. the next day." (4AC ¶ 12.) Without more, this brief overnight detention—far less than the presumptively reasonable 48-hour time period within which a probable cause determination generally must be made to justify detention following an arrest without probable cause—does not rise to the level of a Fourth Amendment violation. *See Cty. of Riverside*, 500 U.S. at 56 (detention of up to 48-hours without a probable cause determination will generally not violate the Fourth Amendment);

*Bryant v. City of New York*, 404 F.3d 128, 136–39 (2d Cir. 2005) (analyzing Section 1983 claim based on "prolonged . . . postarrest detention" under Fourth Amendment standards, and upholding dismissal because "the duration of plaintiffs' detentions did not come close to the presumptively unreasonable 48-hour mark"); *see also Rayfield v. City of Grand Rapids*, 768 Fed. App'x 495, 509 (6th Cir. 2019) (finding that detention for one-day without a probable cause hearing "does not clearly implicate [the plaintiff's] Fourth Amendment rights under *County of Riverside*, as the Supreme Court *in County of Riverside* focused on a 48-hour detention limitation, not the 24-hour limitation Rayfield apparently demanded.").

Despite amending their pleadings multiple times, Plaintiffs have never alleged that their ten-hour overnight detention prior to release was the result of a deliberate delay in processing. *See Wang v. Vahldieck*, No. 09-CV-3783 (ARR) (VVP), 2012 WL 92423, at *8 (E.D.N.Y. Jan. 9, 2012) (upholding Section 1983 claim for unreasonable detention based on allegation that defendant "deliberately delayed processing of [plaintiff's] paperwork in order to maximize the length of her detention"). Accordingly, Plaintiffs' Fourth Amendment Section 1983 claims against the County Defendants for Plaintiffs' post-arrest ten-hour detention are dismissed without leave to amend. The Court observes, however, that this dismissal does not mean the County is off the hook for any claimed Fourth Amendment violations. To the extent Plaintiffs allege that Captain Cinnamo's ordered Plaintiffs' arrests with knowledge that there was no probable cause for the arrests, Plaintiffs have adequately pleaded Fourth Amendment violations for the Section 1983 claims against the County.

### 2. Section 1983 *Monell* Claim Against the County

Plaintiffs now seek to hold the County liable under Section 1983 based on delegation

and ratification theories.[6]  Plaintiffs allege that Sheriff Gore, a final policymaker over the Sheriff's Department for the County, delegated policymaking authority to Captain Cinnamo to act on May 27, 2016.  (4AC ¶ 44.)  Plaintiffs also allege that Sheriff Gore ratified the pre-planned operation to cordon off streets and arrest protesters.  (*Id*. ¶ 43.)  The County Defendants argue that Plaintiffs' pleadings are conclusory and are bare recitations of the *Monell* requirements for Section 1983 municipal liability.  (ECF No. 105 at 4:12–18.)  Defendants argue that there are no factual allegations showing that Sheriff Gore knew about or ratified the conduct that allegedly violated Plaintiffs' rights, and no facts showing that Captain Cinnamo had final policymaking authority.  (ECF No. 97-1 at 8:26–9:6.)

### a.     Section 1983 Municipal Liability Standard under *Monell*

A municipality like the County cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory."  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("We have consistently refused to hold municipalities liable under a theory of *respondeat superior*").  Rather, Section 1983 municipal liability requires a plaintiff to plead and prove that a municipal policy or custom has caused the alleged violation of the plaintiff's constitutional rights.  *Monell*, 436 U.S. at 690–91.  This means that a plaintiff must plead and prove that: (1) the alleged violation was the result of "a longstanding practice or custom which constitutes the standard operating procedure of the local government entity"; (2) "by showing that the decision-making official was, as a

---

[6] In addition to naming the County in their Section 1983 *Monell* claim, Plaintiffs also name Sheriff Gore and Captain Cinnamo in their official capacity.  (4AC ¶¶ 24–25.) However, as this Court has already recognized, an "official-capacity suit is, in all respects other than name, to be treated as a suit against the [government] entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Thus, the naming of these individuals in their official capacities does nothing else than affirm that Plaintiffs are suing the County.

matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 964 (9th Cir. 2008) (quoting *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)).

At the pleading stage, a *Monell* claim against a municipality must consist of more than mere "formulaic recitations of the existence of unlawful policies, conduct, or habits." *Valentine v. City of Crawford*, No. 16-cv-00279-MEJ, 2016 WL 2851661, at *5 (N.D. Cal. May 16, 2016) (quoting *Bedford v. City of Hayward*, No. 3:12-cv-00294-JCS, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012)); *see also AE v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (determining that *Iqbal*'s pleading requirements apply to *Monell* claims). Accordingly, Plaintiffs' "factual allegations 'must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.'" *Save CCSF Coal. v. Lim*, No. 14-cv-05286-SI, 2015 WL 3409260, at *12 (N.D. Cal. May 27, 2015) (quoting *AE*, 666 F.3d at 637). The Court finds that Plaintiffs' *Monell* claims contain sufficient factual allegations which, accepted as true, plausibly suggest an entitlement to relief under either a delegation or ratification theory.

### b. Plaintiffs Plausibly Plead Delegation

The County Defendants move to dismiss Plaintiffs' delegation-based Section 1983 *Monell* claim on the ground that Plaintiffs have not shown that Captain Cinnamo was "vested with anything more than discretionary authority to oversee the Sheriff's Department's participation in the event." (ECF No. 97-1 at 8:26–28.) The County Defendants argue that because Plaintiffs have not shown that Captain Cinnamo was delegated authority to establish municipal policy, Plaintiffs' *Monell* claims must be dismissed as a matter of law. (*Id.* at 8:8–22.) The Court rejects this argument.

- 13 -

When *Monell* liability is premised on delegation, a plaintiff must demonstrate that final policymaker delegated complete authority, not just discretion to act, to the subordinate whose conduct resulted in the claimed constitutional violation. *See St. Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988) ("If the mere exercise of discretion by an employee could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability."). To distinguish between mere discretion and delegated final policymaking authority, "courts consider whether the official's discretionary decisions are 'constrained by policies not of that official's making' and whether the official's decisions are 'subject to review by the municipality's authorized policy-makers.'" *Lytle v. Carl*, 382 F.3d 978, 984 (9th Cir. 2004) (quoting *Praprotnik*, 485 U.S. at 127).

Plaintiffs have pleaded sufficient factual allegations that plausibly show that Captain Cinnamo had full policymaking authority and was not "constrained by policies" or "subject to review." First, Plaintiffs allege, and Defendants do not contest, that Sheriff Gore is a final policymaker for the County over the Sheriff's Department. (4AC ¶ 42.) Second, Plaintiffs describe the response to the protests on the day of the rally as a complex operation involving more than 200 SDPD officers and Sheriff's deputies, with orders flowing from a command center established for the operation and live monitoring by helicopter. (*Id.* ¶ 3.) The alleged resources deployed in the operation suggests a coordinated response plan to protesters by both the City and the County. Plaintiffs expressly allege that Captain Cinnamo was in "top command" of SDSO's participation in the operation, was "present in the command center[,]" and actively gave orders at the time of the alleged conduct. (*Id.* ¶¶ 6–8.) Because Sheriff Gore was not present at the command center and Captain Cinnamo allegedly called the shots on the day of the rally, it is plausible to infer that Sheriff Gore delegated to Captain Cinnamo unconstrained authority to make decisions on behalf of the Sheriff's Department for the operation. In short, Plaintiffs' allegations that Gore had final policymaking authority, their description of the operation's nature and scope, and

Captain Cinnamo's participation in the operation render Plaintiffs' delegation theory sufficient to state a Section 1983 *Monell* claim against the County on this basis.

### c. Plaintiffs Plausibly Plead Ratification

Plaintiffs also allege that Sheriff Gore ratified the conduct at issue in the pre-planned operation. (4AC ¶ 43.) Plaintiffs allege that an operation of this scope would have required the explicit consent of Sheriff Gore. (*Id.* ¶¶ 41–42.) Based on this alone, Plaintiffs infer that Sheriff Gore had knowledge of, and affirmatively ratified, the pre-planned operation, including the conduct that resulted in the claimed constitutional violations. (*Id.* ¶ 43.) The County Defendants move to dismiss on the ground that Plaintiffs' allegations are conclusory, and do not support a finding that Sheriff Gore affirmatively approved the challenged conduct. (ECF No. 97-1 at 9:13–18.) The Court disagrees with the County Defendants.

Although the Court agrees that the facts supporting Plaintiffs' ratification theory are sparse, the Court concludes that Plaintiffs have sufficiently pleaded a Section 1983 *Monell* claim against the County on this basis. For a Section 1983 *Monell* claim based on a ratification theory, the policymaker must: (1) have knowledge of the subordinate's alleged conduct, (2) approve of the subordinate's decision and the basis for it, and (3) make a conscious, affirmative choice to ratify the conduct. *See Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), *vacated on other grounds by, Brosseau v. Haugen*, 543 U.S. 194 (2004); *Gillette v. Delmore*, 979 F.2d 1342, 1347 (9th Cir. 1992). Here, Sheriff Gore is the undisputed final policymaker for the Sheriff's Department of the County. In the absence of a delegation of final policymaking authority, it is reasonable to infer that Sheriff Gore affirmatively ratified the challenged conduct, particularly given Plaintiffs' factual allegations that the County's participation was pre-planned, and the operation was "large-

scale." Thus, the Court concludes that Plaintiffs have sufficiently pleaded a ratification-based Section 1983 *Monell* claim against the County.[7]

\* \* \*

In short, the Court denies the County Defendants' motion to dismiss the Section 1983 *Monell* claim against the County. The Court cautions, however, that Plaintiffs will not be able to simultaneously rely on both delegation and ratification theories to sustain the Section 1983 claims against the County at the merits stage. The unfettered authority required for the theory that Sheriff Gore delegated the County's final policymaking authority to Captain Cinnamo cannot coexist with the theory that Sheriff Gore ratified Captain Cinnamo's conduct. *See Lytle*, 382 F.3d at 984 (stating that subordinates who are subject to supervisor review have not been delegated final policymaking authority). Either Captain Cinnamo had final policymaking authority to direct the County's alleged conduct or he did not such that any municipal liability for the County will depend on whether Sheriff Gore ratified Captain Cinnamo's conduct. Plaintiffs will ultimately need to choose and prove one of these theories. Plaintiffs' pleading of alternative theories for their Section 1983 *Monell* claim, however, is permissible at this stage. *See* Fed. R. Civ. P. 8(d)(3).

### 3. Plaintiffs Plausibly Plead Section 1983 Personal Capacity Claims

Plaintiffs sue Sheriff Gore and Captain Cinnamo in their personal capacities, alleging that Sheriff Gore and Captain Cinnamo in part caused the claimed violations of Plaintiffs' First and Fourth Amendment rights. (4AC ¶¶ 47–48.) The County Defendants move to dismiss on the ground that Plaintiffs have not demonstrated that Sheriff Gore or Captain Cinnamo personally participated in the alleged violations. (ECF No. 97-1 at 1:22–

---

[7] However, if Plaintiffs choose to pursue a ratification theory, they will need to provide facts showing, or facts from which a reasonable inference can be drawn, that Sheriff Gore had knowledge of the challenged conduct underlying the claimed constitutional violations, and that he approved of the conduct. *See Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir. 1991).

- 16 -

24.)  They argue that Plaintiffs cannot allege any facts indicating that Sheriff Gore was present at or had knowledge of the operation on May 27, 2016.  (*Id.* at 4:19–24.) Furthermore, they argue that Plaintiffs have not pleaded facts showing that Captain Cinnamo personally "directed or caused any type of force to be deployed on the Plaintiffs themselves[,]" so his conduct is not causally connected to the alleged deprivations.  (*Id.* at 5:13–14.)  The Court disagrees.

Like municipalities, supervisory municipal officials are not vicariously liable for the actions of subordinates under Section 1983.  *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).  "Yet, this does not prevent a supervisor from being held liable in his individual capacity."  *Larez*, 946 F.2d at 645.  A defendant may be liable as a supervisor under Section 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen*, 885 F.2d at 646).  "The requisite causal connection can be established" if the supervisor set "in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."  *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).  A causal connection between the supervisor and the violation can be established by pleading and ultimately showing: "culpable action or inaction in the training, supervision, or control of [] subordinates," *Larez*, 946 F.2d at 646 (quoting *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987)); "acquiesce[nce] in the constitutional deprivations of which [the] complaint is made," *id.* (citing *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988)); or for conduct demonstrating "reckless or callous indifference to the rights of others[,]" *id.* (citing *Bordanaro v. McLeod*, 871 F.2d 1151, 1153 (1st Cir. 1989)).  Plaintiffs' allegations about Sheriff Gore and Captain Cinnamo satisfy this causal standard.

17cv1230

### a. Sheriff Gore

The County Defendants move to dismiss Plaintiffs' personal capacity Section 1983 claim against Sheriff Gore on the ground that Plaintiffs have not plausibly shown that Sheriff Gore had any knowledge of the operation. (ECF No. 97-1 at 4:19–24.) The Court, however, finds that the factual allegations plausibly show a sufficient causal connection between Sheriff Gore and the operation to state a Section 1983 claim against Sheriff Gore in his individual capacity. Sheriff Gore is the head of the Sheriff Department. (4AC ¶ 42.) Plaintiffs allege that the May 27, 2016 operation was a pre-planned operation between the SDPD and the Sheriff's Department that required extensive deployment of the Sherriff's personnel and resources. (*Id.* ¶¶ 3–4.) Due to the alleged nature and scope of the May 27, 2016 operation, it is reasonable to infer that Sheriff Gore had knowledge of the pre-planned operation as the Sheriff. It is also plausible that, because the operation was in fact carried out, Sheriff Gore either actively "acquiesced" to the plan or showed "reckless or callous indifference" towards the possibility of any alleged constitutional violations arising from the operation. *See Larez*, 946 F.2d at 646. This is sufficient to withstand Defendants' Rule 12(b)(6) motion to dismiss the personal capacity Section 1983 claim against Sheriff Gore.

### b. Captain Cinnamo

Plaintiffs also plead sufficient facts to sustain a Section 1983 claim against Captain Cinnamo in his personal capacity. Plaintiffs allege that Cinnamo was in the command center during the operation and received live reports from officers on the ground and from a police helicopter. (4AC ¶¶ 3, 6.) Plaintiffs further allege that Captain Cinnamo gave orders to SDSOs on the ground throughout the operation—instructing them to cordon off streets, march protesters for over a mile, and provide support and backup for SDPD officers when they arrested protesters. (*Id.* ¶¶ 7–8.) Plaintiffs allege that they were part of the group of protesters targeted by these orders, and that Captain Cinnamo's actions were causally connected to the constitutional violations that they suffered. (*Id.* ¶ 44.)

The County Defendants move to dismiss on the ground that Captain Cinnamo did not allegedly deploy force against Plaintiffs individually and Plaintiffs were not arrested by Sheriff's deputies. (ECF No. 97-1 at 5–7.) The County Defendants' arguments are unavailing.

Regardless of whether it was an SDPD officer or Sheriff's deputy who allegedly physically handcuffed each Plaintiff, Plaintiffs have alleged a sufficient causal connection between the conduct of Captain Cinnamo, Sheriff's deputies, and the alleged deprivation of Plaintiffs' constitutional rights. Plaintiffs have alleged that Captain Cinnamo ordered SDSOs under his command to cordon off streets and arrest protesters, a group which included Plaintiffs. (4AC ¶¶ 9–11.) Plaintiffs further allege that Sheriff's deputies assisted SDPD officers in cordoning off streets and provided backup and support to SDPD officers as these officers arrested Plaintiffs. (*Id.* ¶¶ 33–34.) Finally, Plaintiffs allege that Captain Cinnamo received live updates as his orders were carried out. (*Id.* ¶¶ 3, 6.) Assuming the truth of these allegations, Plaintiffs have sufficiently shown that Captain Cinnamo set "in motion a series of acts" by Sheriff's deputies on the ground that he "kn[ew] or reasonably should [have] know[n] would . . . inflict the constitutional injury." *See Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978). Accordingly, the Court denies the County Defendants' motion to dismiss the Section 1983 individual capacity claims against Captain Cinnamo.

### 4. Plaintiffs' Requests for Declaratory and Injunctive Relief

As a final matter, Plaintiffs request declaratory and injunctive relief "to ensure that Plaintiffs and persons similarly situated will not suffer violations of their rights from Defendants' illegal and unconstitutional policies, customs and practices." (4AC ¶¶ 77, 79.) Plaintiffs allege that Defendants' actions have a "chilling effect on free speech." (*Id.* ¶ 77.) Declaratory and injunctive relief are equitable remedies for which the plaintiff bears the "burden of showing that the [] relief is necessary." *Olagues v. Russoniello*, 770 F.2d 791,

799 (9th Cir. 1985).  To show an entitlement to declaratory or injunctive relief, Plaintiffs must plausibly demonstrate that they have suffered or are threatened with a "concrete and particularized legal harm[,]" along with sufficient likelihood that they "will again be wronged in a similar way." *Canatella v. California*, 304 F.3d 843, 852 (9th Cir. 2002) (citations omitted).  The County Defendants move to dismiss Plaintiffs' requests on the ground that there is no need for equitable relief in this case because "Plaintiffs fail to allege a plausible risk of ongoing or future First or Fourth Amendment deprivations by the County Defendants[.]"  (ECF No. 97-1 at 10:25–28.)  The Court agrees.

### a.    Plaintiffs Have Not Shown a Need for Injunctive Relief

To plead an entitlement to injunctive relief, a plaintiff must demonstrate that she is in "immediate danger" of sustaining a direct injury that is not "conjectural" or "hypothetical." *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983).  "[Past] exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).  Here, Plaintiffs have not alleged a sufficient basis for injunctive relief.  Plaintiffs' alleged violations concern a one-day event which has not been repeated.  Although Plaintiffs allege that Defendants' actions have had a chilling effect on their free speech and have put Plaintiffs in danger of being once again arbitrarily arrested and detained, (4AC ¶¶ 76–77), Plaintiffs simply offer no factual allegations showing that they are personally in imminent danger of suffering any injury, or that there is a significant likelihood that they personally will be arrested and detained in the future based on the same or similar conduct.  Plaintiffs' alleged fear of another arbitrary arrest is purely conjectural.  *See Lyons*, 461 U.S. at 108.  And Plaintiffs' mere allegations of a "chilling effect" are otherwise not sufficiently concrete to "present a justifiable claim." *See Olagues*, 770 F.2d at 797 (citing *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)).  Accordingly, the Court grants the County Defendants' motion to dismiss the requested injunctive relief.

### b. Plaintiffs' Declaratory Relief Claim is Duplicative

"Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 533 (9th Cir. 2008). In determining whether or not to dismiss a declaratory relief claim, the Court must consider whether the relief would "serve a useful purpose in clarifying the legal relations at issue." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011). When a plaintiff has alleged a substantive cause of action, the plaintiff should not request declaratory relief as a "second cause of action for the determination of identical issues." *See Jensen v. Quality Loan Serv. Corp*, 702 F. Supp. 2d 1183, 1188–89 (E.D. Cal. 2010) (citing *Hood v. Superior Court,* 39 Cal. Rptr. 2d 296, 299 (Cal. Ct. App. 1995)).

Plaintiffs have not shown that declaratory relief is necessary in this case, nor can they. *See Olagues*, 770 F.2d at 799. Plaintiffs argue that declaratory relief is required to determine whether Defendants' policies, practices and conduct are "unlawful [and] unconstitutional" or "lawful and constitutional." (4AC ¶ 79.) But Plaintiffs' request for declaratory relief is duplicative of Plaintiffs' legal claims. Resolution of Plaintiffs' Section 1983 claims will "necessarily determine" the constitutionality of Defendants' alleged conduct. Thus, the declaratory relief claim is subject to dismissal as duplicative. *See Jensen*, 702 F. Supp. 2d at 1189; *Camillo v. Wash. Mut. Bank, F.A.*, No. 1:09-CV-1548-AWI-SMS, 2009 WL 3614793, at *13 (E.D. Cal. Oct. 27, 2009) (dismissing declaratory relief claim as redundant where there was no reason to believe it would "resolve any issues aside from those already addressed by the substantive claims[.]"). Accordingly, the Court grants the County Defendants' motion to dismiss Plaintiffs' declaratory relief claim.

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND

Plaintiffs request leave to file a proposed Fifth Amended Complaint. (ECF Nos. 110, 118.) The Court swiftly disposes of two proposed amendments as insufficient to

warrant the filing of yet another amended pleading.  The proposed complaint seeks to correct the name of City Defendant Officer "Ricky Radasa," who Plaintiffs state that they incorrectly named as "Richard Radasa" in the 4AC despite Plaintiffs' correct identification of him in the TAC.  (ECF No. 110-3 at 13:23–6; *see also* TAC ¶ 49.)  The proposed complaint further removes Officer Tony Maraschiello as a named City Defendant.  (ECF No. 110-3 at 14:7–13.)  It is unnecessary for Plaintiffs to file an amended complaint for these proposed changes and the Court addresses these requests at the conclusion of this Order without substantive analysis.

The parties' present dispute focuses on Plaintiffs' remaining proposed amendments in which Plaintiffs seek to add as City Defendants three SDPD officers who allegedly played supervisory roles in the claimed constitutional violations.  (*Id.*)  Plaintiffs request leave to add Lieutenant Christian Sharp, Lieutenant Adam Sharki, and Captain Richard Freedman in their official and personal capacities, purportedly based on new discovery that has now shown the full extent of the involvement of these SDPD officers on the day of the operation.  (*Id.* at 4:5–8.)  The City Defendants oppose Plaintiffs' motion, arguing that Plaintiffs "unreasonably delayed requesting to add Sharki, Sharp and Freedman as new parties."  (ECF No. 116 at 1:22–23.)  The City Defendants also argue that the proposed amendments would unduly prejudice the officers, who would be brought into the litigation after the close of discovery.  (*Id.* at 10:7–18.)  The Court agrees with the City Defendants that Plaintiffs' proposed amendments regarding these individuals are not proper.

## A.    Legal Standard

Rule 16(b) and Rule 15(a) govern consideration of the present motion for leave to amend.  When a motion for leave to amend is filed after entry of a Rule 16 scheduling order, the motion "is governed first by Rule 16(b), and only secondarily by Rule 15(a)." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992)).

- 22 -

Pursuant to Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Good cause under Rule 16(b)(4) means that a pretrial deadline "cannot reasonably be met despite the diligence of the party seeking the extension." *Zivkovic v. S. Cal. Edison Co*., 302 F.3d 1080, 1087 (9th Cir. 2002) (internal quotations and citations omitted). When a party moves for leave to amend after the deadline to amend has passed, good cause "primarily considers the diligence of the party seeking amendment." *Johnson*, 975 F.2d at 609. The diligence standard is "more stringent" than Rule 15(a). *AmerisourceBergen Corp. v. Dialysist West, Inc*., 465 F.3d 946, 952 (9th Cir. 2006); *Morgal v. Maricopa Cty. Bd. of Supervisors*, 284 F.R.D. 452, 459 (D. Ariz. 2012). "If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted." *Zivkovic*, 302 F.3d at 1087. "Prejudice to the non-moving party, while not required under Rule 16(b)'s good cause assessment, can serve as an additional reason to deny a motion[.]" *Coleman v. Quaker Oats Co*., 232 F.3d 1271, 1294 (9th Cir. 2000).

If Rule 16(b) is satisfied, then the court considers the propriety of amendment pursuant to Rule 15(a). "[A] party may amend [its] pleading only by leave of court or by written consent of the party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 15(a) is very liberal[.]" *AmerisourceBergen Corp.*, 465 F.3d at 951; *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "This liberality . . . is not dependent on whether the amendment will add causes of action or parties.'' *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). Whether to grant a motion to amend depends on five factors: (1) bad faith, (2) prejudice to the opposing party, (3) futility, (4) undue delay, and (5) whether the plaintiff has previously amended. *Western Shoshone Nat. Council v. Molini*, 951 F.2d 200, 204 (9th Cir. 1991).

**B. Discussion**

    **1.    All Plaintiffs Must Show Good Cause**

        As a threshold matter, the Court finds that all Plaintiffs must satisfy Rule 16(b)(4)'s good cause requirement.  The Court previously determined that any pleading amendments requested by the *Cervantes* Plaintiffs are subject to Rule 16(b)(4)'s good cause standard given the November 2017 Scheduling Order in *Cervantes*, which set January 5, 2018 as the deadline to amend pleadings or join other parties.  (ECF No. 85 at 7:2–3; *see also* ECF No. 18 at 1:23–24.)  In the Court's prior order granting Plaintiffs partial leave to amend, the Court did not require Pease to show good cause because *Pease* did not have a scheduling order prior to consolidation with *Cervantes* in December 2018.  (ECF No. 85 at 9:11–13.)  However, the present motion for leave to amend comes six months after the Court consolidated *Pease* and *Cervantes*, and after "[t]he Court advise[d] that further Rule 15(a) requests to amend from any Plaintiff [were] strongly discouraged."  (*Id.* at 43:22–23.)  Thus, all Plaintiffs must show good cause under Rule 16(b)(4).

    **2.    Plaintiffs Have Not Shown Good Cause to Amend At This Late Stage**

        Plaintiffs' proposed Fifth Amended Complaint seeks to add three City defendants in their official and personal capacities nearly one and a half years after the deadline to file pleadings has passed and six months after all Plaintiffs moved to file the 4AC.  According to Plaintiffs, Officers Sharp, Sharki and Freedman are "previously fictitiously named key command personnel who directly ordered the violations of Plaintiffs' First and Fourth Amendment rights, and who the City failed to disclose the identities of."  (ECF No. 110-3 at 8:27–9:3.)  Plaintiffs contend that: (1) Sharp made a "second and separate unlawful assembly announcement" two hours after the initial announcement, (*id.* at 15:8–11), (2) Sharki was present in the command center and stated over the radio "'we'd like them arrested,' referring to the Plaintiffs," (*id.* at 17–18), and (3) Freedman was the top-ranking officer of the Bravo Team and was responsible for ordering "his platoon to unreasonably force Plaintiffs to walk over a mile," (*id.* at 16:14–16).  The threshold issue for the Court

is whether Plaintiffs have shown that they diligently sought to add these individuals as new City Defendants.

Diligence is a "case-specific" inquiry that turns primarily on the length of time between the ground necessitating amendment and the movant's request to amend. *See San Diego Ass'n of Realtors, Inc. v. Sandicor, Inc.*, 16-cv-96-MMA, 2017 WL 6344816, at *5 (S.D. Cal. Dec. 12, 2017); *Aldan v. World Corp.*, 267 F.R.D. 346, 357 (N. Mar. I. 2010). "A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 197 (S.D.N.Y. 2014) (internal quotations and citations omitted). Even when the ground for the proposed amendment rests on information learned after the deadline, the diligence inquiry asks whether the plaintiff has sought to interpose its proposed amendment within a reasonably prompt time after learning of the basis for amendment. *See Cervantes v. Zimmerman*, Nos. 17-cv-1230-BAS-NLS, 18-CV-1062-BAS-NLS, 2019 WL 1129154, at *7 (S.D. Cal. Mar. 12, 2019) (finding that good cause could not exist for an amendment sought four months after discovering information about the defendant that should have alerted plaintiffs of the basis for amendment, even when the information was discovered after the deadline to amend had passed).

Plaintiffs argue that they have established good cause under Rule 16(b)(4) for adding these three officers because "[t]he City failed to identify these three commanding officers in initial disclosures and subsequent discovery responses" and for that reason Plaintiffs did not learn of the officers' identities until between February and April 2019. (ECF No. 110-3 at 4:8–10, 7:8–21.) Plaintiffs further contend that they were not fully aware of the role that Officers Sharp, Sharki, and Freedman played in the events of May 27, 2016 until they received additional body-camera footage from the City on May 22, 2019. (*Id.* at 4:21–5:3.) Because Plaintiffs filed the request to amend two weeks after receiving the abovementioned body-camera footage, Plaintiffs insist they have acted diligently and have

shown good cause. (*Id.* at 25: 4–15). The Court disagrees that Plaintiffs have shown good cause to add these individuals as newly named City Defendants at this late juncture.

Contrary to Plaintiffs' assertions, at a minimum, Plaintiffs should have known the officers' identities and role soon after receiving the City's documents between April and September 2018. Indeed, as the City Defendants assert, Plaintiffs should have been aware of the identities and roles of Officers Sharp, Sharki and Freedman as far back as April 2018. (ECF No. 116 at 6:17–18.) The City Defendants point to documents that they provided to Plaintiffs between April and September 2018, which name Sharp 77 times, Sharki 711 times and Freedman 256 times, and list the role assigned to each officer for the events of March 27, 2016. (*Id.* at 7:12–15; *see also* ECF No. 116-7 at 7–15.) As the City Defendants persuasively argue, (ECF No. 116 at 7:2–5), if Plaintiffs had questions about the roles of Officers Sharp, Sharki and Freedman, Plaintiffs had ample opportunity over the past year to depose Plaintiffs' arresting officers and to request additional information about Officers Sharp, Sharki and Freedman.

Plaintiffs could and should have sought their proposed amendments to add these officers as named City Defendants long before the present motion for leave to amend and, more specifically, when Plaintiffs moved for leave to file the 4AC in December 2018. Plaintiffs' delay in seeking amendment relative to when they could or should have known about the basis for amendment cannot meet the diligence standard required by Rule 16(b)(4), particularly given the history of this case. *See Schwerdt v. Int'l Fid. Ins. Co.*, 28 Fed. App'x 715, 719–20 (9th Cir. 2002) (holding that a plaintiff who delayed seven weeks in requesting an amendment after knowing "the basis for seeking to amend his complaint" was not diligent). The Court has already admonished Plaintiffs for their failure to conduct "any basic investigation . . . into the events of the May 27, 2016 Trump rally" that "should have occurred long ago[.]" *Cervantes*, 2019 WL 1129154, at *11. And the Court made clear in its ruling on Plaintiffs' motion for leave to file the 4AC that extensive delays

17cv1230

premised on the purported need to place discovery into context cannot show good cause. *Id.* at *7 (collecting cases).

Even if Plaintiffs were unaware of the full extent of the role of the three officers until shortly before their present request for leave to amend, Plaintiffs' repeated "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *See Johnson v. Mammoth Recreations*, 975 F.2d 604, 609 (9th Cir. 1992). Plaintiffs had the resources to identify and name Officers Sharp, Sharki and Freedman as defendants for over a year, yet only moved to do so on what would have been the eve of the parties' deadline to file motions for summary judgment. The absence of good cause is a sufficient basis to deny Plaintiffs' proposed amendments.[8]

### 3.    Undue Prejudice to Officers Sharp, Sharki, and Freedman

Bringing Officers Sharp, Sharki and Freedman into the litigation at this juncture would also substantially prejudice these individuals. Undue prejudice is relevant to Rule 16(b)(4)'s good cause standard and carries the most weight under Rule 15(a)'s motion to amend standard. *See Foman v. Davis*, 371 U.S. 178, 182 (1962), *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Defendants have shown undue prejudice that warrants denial of the proposed amendments under both Rule 15 and Rule 16. *See Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989). In particular, it would be unduly prejudicial to add Officers Sharp, Sharki and Freedman at

---

[8] In a prior order, the Court found that Plaintiffs had not satisfied Rule 16(b)'s good cause requirement, but ultimately granted Plaintiffs leave to amend so that they could add Captain Cinnamo as a named defendant. The Court found that granting leave to amend was the "lesser of two evils." (ECF No. 85 at 14:18–20.) The Court permitted this exception to resolve the case "on the merits" rather than on "pleading technicalities," particularly given that the claims against Cinnamo related back to the original complaint and thus were not barred by the statute of limitations. (*Id.* at 14:1–9.) As the Court will explain, the proposed Officers Sharp, Sharki and Freedman amendments, however, would be futile because they cannot relate back.

this juncture because discovery is closed.  *See McNally v. Eye Dog Found. for the Blind, Inc.*, No. 1:09-cv-01184-AWI-SKO, 2010 WL 4723073, at *7 (E.D. Cal. Nov. 15, 2010) (denying leave to amend where the parties to be joined would have "virtually no time to conduct discovery, file any pretrial motions, or otherwise adequately defend their case."). Plaintiffs deposed Sharki and Sharp "just before the discovery cut-off date[.]"  (ECF No. 116 at 10:7–9.)  Officer Freedman has never been deposed.  (*Id.* at 7:8–21.)  Thus, these individuals have had no meaningful opportunity to participate in discovery, nor could they. As the Court has repeatedly affirmed, discovery is closed in the lead case and any discovery in *Pease* is limited to factual discovery pertaining specifically to the circumstances of Pease's arrest.  *See generally Cervantes v. Zimmerman*, Nos. 17-cv-1230-BAS-NLS, 18-CV-1062-BAS-NLS, 2019 WL 3072307 (S.D. Cal. July 15, 2019).  As the City Defendants compellingly argue, Plaintiffs continue to treat this litigation as a "spinning vortex," changing theories and discarding and adding Defendants to suit any new inclination.  The Court will not countenance such conduct.

### 4.    The Proposed Amendments Are Otherwise Futile

Even if the Court considered Plaintiffs' proposed amendments under Rule 15's motion for leave to amend standard, Plaintiffs' motion is subject to denial because the statute of limitations has run on Plaintiffs' personal-capacity claims against these officers, thus rendering the proposed amendments futile.  *See Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).  In an attempt to escape the futility of their proposed amendments, Plaintiffs argue that the officers they wish to add were "previously unidentified Doe Defendants, and the amendment should relate back for statute of limitations purposes due to Plaintiffs actually having been ignorant of their identities when the filed their proposed Fourth Amended Complaint." (ECF No. 110-3 at 5:2–15.)  The Court disagrees.

As the Court has previously explained, all Plaintiffs had until May 29, 2018 to raise Section 1983 claims based on the May 27, 2016 rally, under the applicable two-year statute

of limitations. *Cervantes*, 2019 WL 1129154, at *18. Given that the proposed amendments come long after the expiration of the statute of limitations, the officers may only be added as named parties if Plaintiffs' proposed claims against these individual relate back under either California Civil Procedure Code § 474 or Federal Rule of Civil Procedure 15(c)(1)(C), based on whichever standard is more permissive. *See Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1201 (9th Cir. 2014). Neither set of Plaintiffs can show that relation back applies under either standard and thus all Plaintiffs' claims against Officers Sharp, Sharki, and Freedman are barred by the statute of limitations.

First, Plaintiffs find no solace in Section 474's relation back standard. Pursuant to Section 474, a plaintiff who names a Doe defendant in his complaint and alleges that the defendant's true name is unknown has three years from the commencement of the action in which to discover the identity of the Doe defendant, to amend the complaint accordingly, and to effect service of the complaint. Cal. Code Civ. P. § 474; *Lindley v. Gen. Elec. Co.*, 780 F.2d 797, 799 (9th Cir. 1986). A plaintiff must have been genuinely ignorant of the true name of the defendant at the time of filing the earlier pleading and the plaintiff must seek amendment once learning of the Doe defendant's true identity. *Butler*, 766 F.3d at 1202 (citing *Woo v. Superior Court*, 9 Cal. Rptr. 2d 20, 25 (Cal. Ct. App. 1999)). Pease plainly cannot rely on Section 474 because his case was filed on May 29, 2018—after the City Defendants had already provided discovery referring to Officers Sharp, Sharki and Freedman. Pease simply cannot claim to have been "genuinely ignorant" of the identities of these officers.

The *Cervantes* Plaintiffs also cannot rely on Section 474. "Section 474 includes an implicit requirement that a plaintiff may not unreasonably delay his or her filing of a Doe amendment after learning a defendant's identity." *A.N., a Minor v. Cty. of Los Angeles*, 90 Cal. Rptr. 3d 293, 300 (Cal. Ct. App. 2009) (internal quotations omitted). "The standard" for this requirement "is identical to the standard used to demonstrate good cause under

Federal Rule of Civil Procedure 16." *Russell v. Cty. of Butte*, No. 2:14-cv-00694-TLN-CMK, 2015 WL 3833752, at *5 (E.D. Cal. June 19, 2015). As should be clear from the Court's diligence analysis, even if the *Cervantes* Plaintiffs did not know of the identities of Officers Sharp, Sharki and Freedman at the time they brought suit in June 2017, Plaintiffs did not seek to amend their pleadings once learning of the identities of Officers Sharp, Sharki and Freedman in discovery repeatedly referring to these individuals between April 2018 and September 2018. Critical to the Court's present relation back analysis, Plaintiffs did not move to add these individuals as defendants when they plainly could have in their December 2018 motion for leave to file the 4AC in which Plaintiffs sought to add Captain Cinnamo as a new defendant for the County based on information learned in June 2018. Accordingly, the Court concludes that none of the Plaintiffs can rely on Section 474's relation back standard.

Similarly, Plaintiffs cannot rely on Rule 15's relation back standard. "In order for an amended complaint to relate back under Rule 15(c)(1)(C) . . . '(1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party to be brought in must have received such notice that it will not be prejudiced in maintaining its defense; (3) that party must or should have known that, but for a mistake concerning identity, the action would have been brought against it.'" *Butler*, 766 F.3d at 1202 (quoting *Schiavone v. Fortune*, 477 U.S. 21, 29 (1986)). The second and third requirements must have been fulfilled within the time period prescribed by Federal Rule of Civil Procedure 4(m). *Id.* Rule 4(m) establishes a 90-day period. Fed. R. Civ. P. 4(m). Plaintiffs argue that the notice requirement was satisfied "upon the filing of the original complaint." (ECF No. 110-3 at 24.) Even if the Court accepts this argument[9], Plaintiffs' motion to amend briefing is

---

[9] The Court, however, is strained to find that the original *Cervantes* complaint provided adequate notice to Officers Sharp, Sharki, and Freedman. The *Cervantes* Plaintiffs' original complaint was a nine-page bare bones complaint that named only SDPD Chief Zimmerman and Sheriff Gore as defendants "in their official capacity." (ECF No. 1 ¶¶ 13–14.) Plaintiffs raised a *Monell* liability claim only against the City and, to the extent

entirely silent on whether there was a "mistake" in identity that would satisfy Rule 15(c)(1)(C)'s third requirement. At most, the reason none of the Plaintiffs sued Officers Sharki, Sharp, and Freedman at the time of their respective original pleadings is that Plaintiffs did not know which officers to sue. "Simply not knowing who to sue," however, does not qualify as a "mistake" under Rule 15 even when a plaintiff has identified a Doe defendant. *Bondurant v. City of Battleground*, No. 3:15-cv-05719-KLS, 2016 WL 5341966, at *4 (W.D. Wash. Sept. 23, 2016); *Hagen v. Williams*, No. 6:14-cv-00165-MC, 2014 WL 6893708, at *6 (D. Or. Dec. 4, 2014) ("[I]ntentionally naming a 'John Doe' Defendant is not a 'mistake' as to the Defendant's identity" for the purpose of Rule 15 relation back). Therefore, none of the Plaintiffs can rely on Rule 15's relation back standard either. Thus, the motion for leave to amend to add Officers Sharp, Sharki, and Freedman is denied for the independent reason that any claims against them are futile as time-barred.

Nevertheless, this ruling does not, without more, preclude Plaintiffs from presenting at trial evidence relating to the conduct of the three officers as part of their Section 1983 *Monell* claims. Given that Plaintiffs have named the City as a defendant, it is not necessary—and is entirely duplicative—for Plaintiffs to name every SDPD officer involved in the events of May 27, 2016 in his or her official capacity. *See Hopper v. Cty. of Riverside*, No. ED CV 18-01277-JAK (DFM), 2018 WL 6092563, at *3 (C.D. Cal. Nov. 20, 2018) ("If a government entity is named as a defendant, it is not only unnecessary and redundant to name individual officers in their official capacity, but also improper." (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)).

---

the Does 1–50 officers were referenced, the *Cervantes* Plaintiffs' allegations concerned the officers who "physically restrained Plaintiffs" and the "peace officers of the City and County" who allegedly "batter[ed], harass[ed], falsely arrest[ed] and imprison[ed] Plaintiffs." (*Id.* ¶¶ 33, 45.)

17cv1230

## CONCLUSION & ORDER

For the foregoing reasons, the Court **ORDERS** as follows:

1. The Court **GRANTS IN PART AND DENIES IN PART** the County Defendants' motion to dismiss. (ECF No. 97). The Court **GRANTS** the County Defendants' motion to dismiss Plaintiffs' requests for declaratory and injunctive relief. Subject to the Court's clarification that this dismissal does not dispose of all claimed Fourth Amendment violations, the Court also **GRANTS** the County Defendants' motion to dismiss the Fourth Amendment claims against the County Defendants concerning Plaintiffs' alleged 10-hour post-arrest detention. These claims are **DISMISSED WITHOUT LEAVE TO AMEND**. The Court **DENIES** the County Defendants' motion to dismiss on all other grounds.

2. The Court **DENIES** Plaintiffs' motion for leave to file a Fifth Amended Complaint. (ECF No. 110.)

3. The Court does not find it necessary for an amended complaint to be filed in order to correct Defendant Radasa's first name. *See East Bay Mun. Util. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. C 09-0614 PJH, 2009 WL 975442 at *3 (N.D. Cal. Apr. 10, 2009) ("[M]inor errors in the name of a defendant, through misspelling or other error do not render the summons substantially defective when the summons and complaint are actually received by the defendant and the defendant is not misled by the error[.]"). "Ricky M. Radasa" is already correctly identified as a defendant on the case docket and the Answer to the 4AC filed by the City Defendants does not dispute Defendant Radasa's identity. (ECF No. 93.) The parties **SHALL USE** Radasa's correct name in all future filings.

4. Pursuant to Rule 21, the Court **TERMINATES** Officer Maraschiello as a defendant. The Clerk of the Court **SHALL UPDATE** the docket accordingly.

**IT IS SO ORDERED.**

**DATED: July 29, 2019**

Hon. Cynthia Bashant
United States District Judge