UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAIRO CERVANTES RAMIREZ, *et al.*, | Lead Case No.: 17-cv-1230-BAS-AHG<br>Consolidated with: 18-cv-1062-BAS-AHG |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION FOR RULE 37 SANCTIONS** |
| SAN DIEGO POLICE CHIEF SHELLY ZIMMERMAN, *et al.*, | |
| Defendants. | **[ECF No. 128]** |

This matter comes before the Court on Plaintiff's Rule 37 Motion. ECF No. 128. Plaintiff seeks sanctions pursuant to Federal Rule of Civil Procedure 37 against all Defendants for various alleged discovery violations under Federal Rule of Civil Procedure 26. For the reasons that follow, the Motion is **DENIED**.

## I.      PROCEDURAL BACKGROUND

The factual background of this case has been set forth in numerous prior orders and will thus not be exhaustively rehashed herein. *See, e.g.*, ECF No. 85 at 1-3. Relevant to the present Order, this case arises from a May 27, 2016 rally at the San Diego Convention Center for then-presidential candidate Donald Trump ("the rally"), which drew the attendance of both anti-Trump and pro-Trump demonstrators. Plaintiffs were anti-Trump

demonstrators at the rally who contend that the City of San Diego ("the City") and the County of San Diego ("the County"), through the actions of law enforcement officers employed by the San Diego Police Department ("SDPD") and the San Diego County Sheriff's Department ("SDCSD"), violated their First and Fourth Amendment rights by declaring an unlawful assembly and arresting and detaining Plaintiffs, while allowing pro-Trump demonstrators to continue their assembly. Consequently, Plaintiffs contend they were denied the right to peaceful assembly and were subject to false imprisonment, assault, and battery. *See* ECF No. 89. Plaintiffs' claims are brought against the City of San Diego, Shelley Zimmerman, Ricky Radasa, Samuel Euler, Tony Maraschiello (collectively, the "City Defendants"), the County of San Diego, William Gore, and Charles Cinnamo (collectively, the "County Defendants").

Plaintiffs' counsel in the lead case, *Ramirez et al. v. Zimmerman et al.*, Case No 3:17-cv-1230-BAS-AHG ("the *Cervantes* case")[1], Bryan Pease, filed a separate action in which he is the sole named Plaintiff on May 29, 2018, *Pease v. Gore et al.*, Case No. 3:18-cv-1062-BAS-AHG ("the *Pease* case"), nearly a year after filing the *Cervantes* case on behalf of his clients in June 2017. The Court then consolidated the two cases over Plaintiffs' objections due to their common factual nexus. The parties have had numerous discovery disputes relevant to both cases, some of which are revived in Plaintiffs' present motion before the Court. In particular, the Court previously found that Plaintiffs failed to timely raise certain challenges to Defendants' productions in discovery and denied Plaintiffs' related motions on that basis. *See* ECF Nos. 104, 121. Plaintiffs contend that, although some of the same discovery material is at issue, the disputes raised in this motion are distinct from earlier disputes because they are raised in the context of enforcing the self-executing disclosure requirements of Rule 26—which trigger automatic sanctions under

---

[1] Plaintiff Jairo Cervantes dropped "Ramirez" from his legal name after becoming a United States Citizen. *See* ECF No. 71 at 9. As a result, the Court refers to the case as the *Cervantes* case rather than the *Ramirez* case. *See* ECF No. 85 at 2 n.1.

Rule 37—rather than discovery violations, which the Court previously found untimely. Additionally, Plaintiffs contend the discovery at issue is electronically stored information that Defendants have lost or destroyed, in violation of Rule 37(e).

## II.    LEGAL STANDARD

In their Motion, Plaintiffs state they are seeking sanctions specifically pursuant to Rule 37(e) of the Federal Rules of Civil Procedure, which governs spoliation of discovery and provides as follows:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> > > (A) presume that the lost information was unfavorable to the party;
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). *See also* ECF No. 128-1 at 3, 7, 10-11 (indicating the motion is brought pursuant to Rule 37(e)).

A party moving for spoliation sanctions under Rule 37(e)(2) bears "the burden of establishing spoliation by demonstrating that [the non-moving party] destroyed documents and had some notice that the documents were potentially relevant to the litigation before they were destroyed." *Harfouche v. Wehbe*, 705 F. App'x 589, 590 (9th Cir. 2017) (quoting *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 766 (9th Cir. 2015)). *See also United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002).

If the moving party cannot show that the non-moving party acted with "intent to deprive" another party of the information but otherwise establishes that the evidence was lost because the non-moving party failed to take reasonable steps to preserve it, the

subparagraph applies only "upon finding prejudice" to another party from the loss of information. Fed. R. Civ. P. 37(e)(1). "The Court has discretion to determine whether the loss of the information is prejudicial; neither party carries a burden of proving or disproving prejudice." *Hernandez v. Tulare Cty. Corr. Ctr.*, No. 116CV00413EPGPC, 2018 WL 784287, at *4 (E.D. Cal. Feb. 8, 2018) (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment). The Court's evaluation of whether the loss of the information was prejudicial depends in part on the importance of the information to the case. *Id.* Further, upon a finding of prejudice, the Court may issue a sanction "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

Although Plaintiffs deem their Motion to be a Rule 37(e) motion only, it is clear from the substance of their arguments that they also seek sanctions under Rule 37(c)(1). *See* ECF No. 128-1 at 3 (quoting a prior order of the Court that issued Rule 37(c)(1) sanctions). Rule 37(c)(1) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> > (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
> > (B) may inform the jury of the party's failure; and
> > (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37.

Thus, Rule 37(c)(1) is tied to the initial disclosure requirements of Rule 26(a)(1)(A), which include in pertinent part the requirement that a party must, without awaiting a discovery request, provide to the other parties "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.]" Fed. R. Civ. P.

26(a)(1)(A)(iii). "The purposes of the initial disclosure requirements are important and clear. Parties should be put on notice of the factual and legal contentions of the opposing party, and the initial disclosure requirements eliminate surprise and trial by ambush." *Silvagni v. Wal-Mart Stores, Inc.*, 320 F.R.D. 237, 240 (D. Nev. 2017) (citing *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862-63 (9th Cir. 2014)).

Rule 37(c)(1), in turn, provides both a "self-executing, automatic sanction" forbidding the use at trial of any information by a party who failed to properly disclose it under Rule 26(a), and further permits the Court to issue a range of additional or alternative sanctions to remedy any such nondisclosure, unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37; *see also Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). The party requesting sanctions under Rule 37(c) bears the initial burden of establishing that the non-movant failed to comply with the disclosure requirements of Rule 26. *Silvagni*, 320 F.R.D. at 241. If noncompliance is shown, the party facing Rule 37's "self-executing, automatic sanction" of prohibiting that party from using any improperly undisclosed evidence at trial bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012).

## III. DISCUSSION

Before turning to the discussion of the documents at issue in Plaintiffs' motion, the Court first notes that whether evidence should be excluded at trial under Rule 37(c)(1) is ultimately a matter for the presiding District Judge to decide. However, the undersigned may consider the present motion to determine whether Plaintiffs have established a violation of Rule 26(a) or (e) that would warrant a recommendation to the District Judge to issue Rule 37(c)(1) exclusionary sanctions. Additionally or alternatively, if the Court finds such a violation, the undersigned may directly issue non-dispositive sanctions, or may otherwise recommend the District Judge impose any of the dispositive sanctions listed in Rule 37(b)(2)(A)(i)-(vi).

With that in mind, the Court will now address Plaintiffs' motion for sanctions with respect to the City Defendants and the County Defendants separately, discussing in turn each document or set of documents at issue.

### A. City Defendants

### i. ICS 214 Logs and Scribe Documents

Plaintiffs first argue that the City Defendants should be sanctioned for failing to disclose or produce Incident Command System ("ICS") logs related to the rally. For background, the ICS is a component of California's Standardized Emergency Management System, which "provides incident commanders with a system for managing critical incidents in an organized and effective manner." ECF No. 133 at 5 (quoting ECF No. 128-2 at 60, Pease Decl. Ex. 7). *See also* CAL. GOV. CODE § 8607(a)(1) (providing for the ICS "as a framework for responding to and managing emergencies and disasters involving multiple jurisdictions or multiple agency responses"). The San Diego Police Department defines the ICS in its formal procedures as a "nationally-used, standardized, on-scene, emergency management concept specifically designed to allow its user(s) to adopt an integrated organizational structure equal to the complexity and demands of single or multiple incidents without being hindered by jurisdictional boundaries." *See* ECF No. 128-2 at 64, Pease Decl. Ex. 8.

The discovery dispute related to ICS concerns both "ICS 214" logs and scribe documents. Plaintiffs note that the City Defendants provided a blank "ICS 214" log attached to its Incident Action Plan during discovery. ECF No. 128-1 at 4; *see also* ECF No. 128-2 at 87, Pease Decl. Ex. 10 (copy of the blank form entitled "Activity Log (ICS 214)"). The blank ICS 214 Activity Log indicates that the form is typically used to document such information as the incident name, the operational period, the resources assigned, and—most critically—the date, time, and description of any "Notable Activities." *Id.* Plaintiffs assert the ICS 214 log is "the key document that each unit in an ICS must fill out[,]" but that City Defendants maintain that neither of the co-lead agencies involved in the rally actually used or filled out the log. As a result, no completed ICS 214

forms have been produced to Plaintiffs during discovery. Similarly, Plaintiffs argue City Defendants' own internal policies as well as "general ICS protocol" require an incident scribe to document any incident that is the subject of ICS, yet City Defendants claim there was no incident scribe. ECF No. 128-1 at 4.

Notwithstanding the representations of City Defendants, Plaintiffs contend that both ICS forms as well as scribe documents *must* exist due to ICS having been implemented for the rally. ECF No. 128-1 at 4; *see also* ECF No. 128-2 at 72-73, Myers Dep. 11:7-12:12 (Plaintiffs' expert Dave Myers, a recently retired Commander in the SDCSD, explaining his opinion that if ICS was implemented, there must be documentation). Refuting retired Commander Myers, former SDPD Chief Shelley Zimmerman provided a Declaration stating that ICS forms are not required for every incident in which ICS is utilized, and "the forms are most often used during major fires, where the incident extends over several days, multiple agencies are involved, and the agencies are being reactive rather than preventative" and "are also most often used to seek reimbursement for the costs incurred in responding to a critical incident." ECF No. 133-1 at 2; Zimmerman Decl. ¶ 3. Chief Zimmerman asserts that she does not believe SDPD used ICS 214 logs during the rally, and that Lieutenant Adam Sharki was in the Command Center performing the function of the scribe by contemporaneously recording the events of the day in a timeline spreadsheet.[2] *Id.* ¶ 4. *See also* ECF No. 133-10 (copy of Lt. Sharki's timeline).

The City Defendants' investigator, Sharon Smyth, provided a Declaration as well, documenting her efforts to determine whether ICS forms and scribe documents existed in response to Plaintiffs' discovery requests. ECF No. 133-2. According to Ms. Smyth, SDPD's Administrative Services Manager informed her that SDPD received $28,451.50 from the Convention Center that hosted the rally to pay for the police services, and that SDPD did not seek or receive reimbursement from the federal government. *Id.* ¶ 2. Further,

---

[2] Lieutenant Sharki's spreadsheet timeline was produced to Plaintiffs and is not at issue.

after Plaintiffs followed up on their discovery request concerning the ICS logs and scribe documents that were purportedly missing on two more occasions, Ms. Smyth then contacted, respectively, Lt. Sharki and the San Diego Fire Department to ascertain whether these documents existed. *Id.* ¶¶ 4-5. Lt. Sharki reported his belief that his timeline was the only real-time documentation of the events of the rally, and Ms. Smyth was unable to locate anyone else who acted as scribe or any sign-in sheets from the command center. *Id.* ¶ 4. The San Diego Fire Department also did not believe any ICS 214 form was submitted for reimbursement. *Id.* ¶ 5.

Plaintiffs cite to the title of a PDF that the SDPD provided in response to Mr. Pease's public records request to prove that "the City *did* submit an invoice for ICS reimbursement[.]" ECF No. 135 at 3. However, Plaintiffs do not provide the document itself, and instead only quote its title: "PRA 19 2662 Invoice 1000169964 SD Conv Center $28451.50.pdf." *Id.* (citing ECF No. 128-2 at 81). This title is consistent with Ms. Smyth's testimony that SDPD received $28,451.50 from the San Diego Convention Center, and thus fails to effectively rebut the City Defendants' argument that SDPD did not use ICS 214 logs on the day of the rally because the City did not seek reimbursement *from the federal government*. ECF No. 133 at 5-6. Therefore, the Court is not persuaded by the PDF title that Plaintiffs have shown ICS 214 logs must exist.

Having thoroughly reviewed the evidence on which Plaintiffs rely to establish the City Defendants withheld ICS documents, the Court **DENIES** Plaintiffs' motion for sanctions on this issue. Plaintiffs have not pointed to sufficient grounds to meet their burden of establishing that these documents ever existed in the first place, let alone that they have been lost or destroyed as necessary to obtain Rule 37(e) sanctions.

In reaching this conclusion, the Court finds the following persuasive authority in a case with similar allegations directly on point:

> Here, plaintiff fails to meet her burden of establishing that the documents allegedly destroyed ever existed in the first place. Counsel for plaintiff has deduced from testimony and other documents that the "missing" documents existed at one time and were destroyed as a result of reckless or intentional

misconduct on the part of defendants and their counsel. The Court is not convinced. The evidence before the Court is not sufficient to support a conclusion other than that skilled counsel has examined other evidence and concluded that some additional documents should exist. Equally skilled counsel on the other side has analyzed the same testimony and documentary evidence and posted a less sinister explanation for the "missing" documents: that they never existed or that they exist and have been produced with a label that differs from the description provided in other produced documents or sworn testimony.

*Witt v. United States Dep't of the Air Force*, No. 06-5195RBL, 2010 WL 11685358, at *1 (W.D. Wash. Aug. 10, 2010).

The same is true here. In trying to meet their burden to establish the existence of the purportedly missing ICS 214 logs and scribe documents, Plaintiffs rely on: (1) the opinion of their expert, retired Commander Myers; and (2) SDPD's own procedures "showing that such documents must exist[.]" However, Commander Myers has no personal knowledge of whether ICS 214 logs were created relating to the rally; his deposition testimony is based purely on general knowledge of when and how the SDPD implements ICS:

> Q: . . . So can you help me to understand what – how did you know that [ICS] was implemented?
>
> A: Well, based on my opinion that it was implemented. Also looking and knowing policy within the Sheriff's Office and San Diego Police Department. [W]hen incidents of that scale are implemented, especially when you have the Unified Command which took place between San Diego Police and San Diego Fire, [] there's an incident command structure that takes place. And then what flows from there is a management structure, and documentation that comes from the implementation of that, especially for an incident that would have been as large as that. . . . Most of the time in incidents like that where are you are dealing with federal issues you are entitled to reimbursement [from the federal government]. Sometimes entities submit for reimbursement, sometimes they don't. You still have to have documentation.

*ECF No. 128-2 at 72-73, Myers Dep. 11:20-12:12.*

This deposition testimony is consistent with the Declaration of former Chief Zimmerman, who asserted that the ICS 214 forms were most often used when seeking federal reimbursement, but that this particular incident was documented through Lieutenant Sharki's timeline instead. Moreover, even if retired Commander Myers is correct that SDPD "ha[s] to have documentation" of its ICS implementation regardless of whether federal reimbursement is sought, Plaintiffs have pointed to no deposition testimony or other evidence showing that the documentation of the incident was necessarily in the form of ICS 214 logs. Curiously, Plaintiffs assert in their Reply that the declaration of their expert, former Commander Myers, is "unrebutted." ECF No. 135 at 3. However, as outlined above, his opinion that the logs must exist is heavily rebutted by the Smyth and Zimmerman declarations.

Additionally, the Court has reviewed the SDPD procedures that Plaintiffs contend require SDPD to have filled out ICS 214 logs and to have used an incident scribe, and finds them unpersuasive on that point. ECF No. 128-2 at 59-69, Pease Decl. Ex. 7. As an initial matter, the procedures Plaintiffs provide, SDPD Procedure Number 8.01 – Critical Incidents and SDPD Procedure 8.02 – Critical Incidents, are dated May 11, 2017 and December 1, 2016, respectively, which are both dates *after* the rally took place. Therefore, the Court generally finds them unavailing as evidence proving that the documents at issue "must exist" pursuant to the operative SDPD procedures on the day of the rally.

Moreover, even if these documents reflected the procedures in place at the time of the rally, the Court finds they do not support Plaintiffs' contention. First, the SDPD procedures provided make no mention of the ICS 214 logs whatsoever. Second, although the procedures "provide a basic overview of the various ICS organization's key positions[,]" including an "Incident Scribe" who is tasked with "record[ing] information from all incident messages[,]" the procedures also make clear that "[t]he ICS organization can be as small or as large as is required by the incident" and "[t]he Incident Commander is responsible for determining the scope

10

of the ICS organization that is required." ECF No. 128-2 at 66. Attachment A to SDPD Procedure 8.02, showing the ICS Organization Chart, is consistent with this directive, providing: "Incident Commanders should activate ONLY those positions that are needed to accomplish the incident objectives." *Id*. at 69. Therefore, Plaintiffs have not met their burden of showing that SDPD utilized a scribe as part of its implementation of ICS during the rally, but improperly withheld and/or destroyed the documents the scribe created. Nor have Plaintiffs established that SDPD completed ICS 214 logs to document the implementation of ICS.

"Mere speculation is an insufficient basis for a finding of spoliation." *U.S. Legal Support, Inc. v. Hofioni*, No. 2:13-CV-1770 LKK AC, 2014 WL 172336, at *4 (E.D. Cal. Jan. 15, 2014) (citing *Gomez v. Stop & Shop Supermarket Co.*, 670 F.3d 395, 399 (1st Cir. 2012) ("It is a proposition too elementary to require citation of authority that when there is no evidence to begin with, a claim of spoliation will not lie.")) (other citation omitted). Therefore, the Court **DENIES** Plaintiffs' motion for sanctions on the basis that City Defendants have improperly destroyed ICS 214 logs or scribe documents.

### ii. After Action Report

Plaintiffs also seek the unredacted version of an "After Action Report" they obtained during discovery. The Court has already ruled that Plaintiffs failed to timely seek an unredacted version of the After Action Report and has accordingly denied Plaintiffs' repeated attempts to require its production. *See* ECF No. 104 at 12-13; ECF No. 121 at 6 n.3. Plaintiffs acknowledge as much, but contend this precise issue has not yet been decided despite the earlier rulings, because "the present motion is not a discovery motion, but rather a Rule 37 motion to enforce sanctions for violating the self-executing disclosure provisions of Rule 26." ECF No. 128-1 at 5. Additionally, Plaintiffs bring another spoliation argument on the basis that they submitted a Public Records Act request to the SDPD for the document, and SDPD responded that the document does not exist in their files. *Id.*

Even viewing the After Action Report dispute solely through the lens of the initial disclosures requirement of Fed. R. Civ. P. 26(a)(1)(A), the Court finds Plaintiffs' argument

fails. First, Plaintiffs address the After Action Report in a very cursory fashion in their Motion, providing no argument to support their contention that the After Action Report is a document that should have been included in initial or supplemental disclosures. For instance, Plaintiffs make no effort to explain why they believe the City Defendants "may use" the unredacted version of the document "to support [their] claims and defenses[.]" Fed. R. Civ. P. 26(a)(1)(A)(ii). "The disclosure obligation applies to 'claims and defenses,' and therefore requires a party to disclose information that it may use to support its denial or rebuttal of the allegations, claim, or defense of another party." Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment. Here, Plaintiffs did not provide a copy of the redacted After Action Report for the Court's review, offer any description of its contents in the motion, or otherwise explain the basis of their position that the document is one that is relevant to the City Defendants' defenses or that may be used to rebut Plaintiffs' allegations. Therefore, Plaintiffs have not met their burden of showing why the unredacted version should have been disclosed initially or on supplementation.

Second, even if the After Action Report should have been provided in the City Defendants' initial disclosures, the "self-executing" sanction of Rule 37(c) only applies where a party "fails to provide information . . . as required by Rule 26(a) or (e)," i.e., if the City Defendants had failed *either* to disclose *or* to timely supplement their disclosures with the After Action Report. Fed. R. Civ. P. 37(c)(1). Turning to Rule 26(e), however, the duty to supplement disclosures only arises "if the party [who failed to make a disclosure required under 26(a)] learns that in some material respect the disclosure or response is incomplete or incorrect, *and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process*[.]" Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Here, Plaintiffs freely admit they obtained the After Action Report— albeit a redacted version—more than seven months before the close of discovery, on April 11, 2018. Therefore, even if the After Action Report should have been disclosed in the City Defendants' initial disclosures, it is unclear when Plaintiffs argue the City Defendants' duty to supplement arose and they failed to comply with that duty, thus

triggering Rule 37. Plaintiffs make no argument that the redactions are improper, and, even if Plaintiffs did make such an argument, the Court has already properly addressed that argument as an untimely raised discovery dispute rather than an issue arising under Rule 37. *See* ECF No. 104 at 12-13 (addressing whether the unredacted After Action Report should have been produced during discovery in response to Plaintiffs' Requests for Production Nos. 3 and 4).

As for Plaintiffs' spoliation argument regarding the unredacted version of the After Action Report, the exhibit on which Plaintiffs rely to show that SDPD "lost or destroyed" the document does not support Plaintiffs' contention. *See* ECF No. 128-2 at 81-85, Pease Decl. Ex. 9. In response to Plaintiffs' Public Records Act request for the unredacted version of the document, SDPD responded, "All responsive documents have been released except for portions redacted pursuant to Government Code sections 6254(b) and (f)." *Id*. at 82. Section 6254(b) exempts from disclosure in response to public record requests "[r]ecords pertaining to pending litigation to which the public agency is a party, . . . until the pending litigation or claim has been finally adjudicated or otherwise settled." CAL. GOV. CODE § 6254(b). Subparagraph (f), in turn, exempts from disclosure "[r]ecords of . . . investigations conducted by, or records of intelligence information or security procedures of . . . any state or local police agency, or an investigatory or security files compiled by any other state or local police agency. . . ." CAL. GOV. CODE § 6254(f).

Again, whether or not the After Action Report was properly redacted under these code sections is not before the Court, and such a dispute would be rightly characterized as an untimely discovery dispute. *See, e.g.*, ECF No. 135 at 5 (Plaintiffs acknowledging in their reply that they "did not realize until it was too late" that the document had been redacted, and arguing that the City Defendants have "never provided any justification for redacting this document."). However, SDPD's response to the records request documented in Exhibit 9 to Mr. Pease's Declaration makes clear that there is no basis to find the City Defendants lost or destroyed the unredacted version. Plaintiffs cite *only* to this Exhibit to support their spoliation argument. ECF No. 128-1 at 5. Thus, they have failed to meet their

burden of showing spoliation of the unredacted After Action Report. Accordingly, the Court **DENIES** Plaintiffs' requests for Rule 37(c) or Rule 37(e) sanctions stemming from the City Defendants' failure to disclose or produce the unredacted version of the After Action Report.

### B. County Defendants

#### i. Emails, Planning Documents, and Notes

Turning to Plaintiffs' Rule 37 Motion as it pertains to the County Defendants, Plaintiffs first argue that the County Defendants should have disclosed various emails, planning documents, and notes from SDCSD planning meetings related to the rally. ECF No. 128-1 at 7-11. Plaintiffs assert that County Defendants have never identified nor produced any emails as part of this case. *Id.* at 10. Plaintiffs provide the email exchanges between their counsel and counsel for County Defendants regarding the emails and other documents to establish that "the County is now claiming such emails do not exist" and similarly "claiming the [planning] documents [and notes from planning meetings] do not exist[.]" *Id.* at 10, 11. Therefore, Plaintiffs argue that County Defendants should be sanctioned under Rule 37(e) for losing or destroying the emails, planning documents, and notes.

In response, the County Defendants first argue this is an untimely raised discovery dispute, because Plaintiffs never moved to compel such documents during discovery. Second, County Defendants deny any such evidence was lost or destroyed and argue the emails do not indicate that they represented otherwise.

The Court finds Plaintiffs have failed to show that the County Defendants were required to disclose emails, planning notes, and other planning documents in their initial disclosures. As with their argument regarding the After Action Report, Plaintiffs again fail to explain why they believe such emails, notes, or planning documents would qualify as required disclosures under Fed. R. Civ. P. 26(a)(1)(A). Instead, Plaintiffs focus their argument entirely on their contention that County Defendants lost or destroyed these documents in violation of Fed. R. Civ. P. 37(e). *See* ECF No. 128-1 at 7-11. Although the

motion extensively quotes email exchanges between Plaintiffs' counsel and counsel for County Defendants in which Plaintiffs' counsel avers the documents should have been disclosed under Rule 26, Plaintiffs make no such argument in the motion itself, except in a conclusory fashion in the background section of the motion. *See id.* at 5 ("The County clearly violated Rule 26 by failing to identify any such emails"). Plaintiffs do not expound on this assertion in the argument section. *Id.* at 7-11. Therefore, Plaintiffs have not met their initial burden of establishing that County Defendants violated their initial disclosure obligations under Rule 26. *See Silvagni*, 320 F.R.D. at 241. Again, Plaintiffs must show that County Defendants failed to disclose documents that were relevant to their defenses. Plaintiffs do not attempt to do so. The Court agrees it is likely such documents exist and, if so, at least some of them would have been responsive to Plaintiffs' Request for Production ("RFP") No. 2 served on County Defendant Gore, and cited in County Defendants' Response, which requested "[a]ny and all DOCUMENTS relating to any COMMUNICATION at any time regarding the EVENT between YOU and any other person." *See* ECF No. 128-2 at 36. However, as County Defendants note, they objected to this RFP "primarily on grounds of overbreadth and undue burden," and Plaintiffs did not timely raise a discovery dispute with the Court or otherwise seek to compel the documents after receiving the objection in April 2018. ECF No. 134 at 4. Although Plaintiffs now frame the issue as a violation of Rule 26(a)(1)(A), for the reasons already explained, they have failed to meet their burden to establish such a violation in the motion at hand.

As for the spoliation argument, the Court finds that the email exchanges between counsel give no indication that the emails or other documents at issue have been lost or destroyed. To show spoliation, Plaintiffs rely on an email exchange from September 16, 2019, when Plaintiffs' counsel emailed counsel for both City Defendants and County Defendants seeking "ICS logs on the city side, and documents/emails/notes regarding planning meetings on the county side. We discussed these by email **in May**. . . ." ECF No. 128-1 at 9 (emphasis added). Counsel for County Defendants responded in relevant part: "[T]he [documents] you asked me specifically for **in May** do

not exist (as I verified and communicated to you). And any communications or notes you feel you were entitled to as part of discovery should have been addressed in a motion to compel." *Id.* (emphasis added). Plaintiffs' counsel then replied, in part, "Emails involving the county clearly exist, and some were even turned over in the city's production. . . . If you're saying such emails, notes, and planning documents do not exist because they were lost or deleted, then Rule 37(e) entitles us to a ruling that the lost electronically stored information would have supported plaintiffs' position." *Id.* at 9-10. Finally, defense counsel responded: "I'm not even sure what you are talking about, because all of this is from so long ago. All I will say is [that] Rule 26 requires us to disclose evidence that supports our defenses—not evidence that supports plaintiffs' position." *Id.* at 10. *See also* ECF No. 128-2 at 55-57, Pease Decl. Ex. 6 (copy of the September 16, 2019 email exchange).

In their Response to the present motion, County Defendants cite to the May 2019 emails being referenced in the exchange just quoted, which are also attached to Plaintiffs' motion as part of Exhibit 4 to Mr. Pease's Declaration. *See* ECF No. 128-2 at 42-44. A review of the May emails shows that the documents that "do not exist" according to County Defendants are, once again, the ICS logs and scribe documents, *not* emails, notes, and other planning documents. Specifically, on April 25, 2019, Mr. Pease emailed counsel for City Defendants and County Defendants regarding the ICS logs and scribe documents. *Id.* at 44. The April 25 email does not mention any other documents. In response, Christina Vilaseca, counsel for County Defendants, wrote on May 9, 2019: "I have received confirmation from the Sheriff's Department that they do not have the documents you seek, and that the Department did not have a scribe at the event." *Id.* at 43. Only then did Mr. Pease bring up the "documents, notes, and emails from all the planning meetings attended" in his reply and request that the County Defendants produce such documents. *Id.* Ms. Vilaseca refused to produce them on the basis that Mr. Pease "had an opportunity to ask for all of these items, if you believe they exist, during discovery. You did not do that [with] this level of

specificity, nor did you bring a timely motion to compel. I am not now going to indulge in this fishing expedition, after discovery in *both* cases has long closed." *Id.* at 42.

Taken together, the September 16, 2019 exchange and the May 9, 2019 exchange between Plaintiffs' counsel and County Defendants' counsel reveal that County Defendants never took the position that emails, notes, and planning documents relating to the rally do not exist or otherwise indicated such documents had been destroyed. Rather, consistent with their response to the present motion, County Defendants' counsel confirmed in the May 2019 exchange that the ICS logs and scribe documents do not exist to their knowledge, and further argued that Plaintiffs were simply too late in seeking production of the County's emails, notes, and planning documents. Then, in the September 2019 exchange when Plaintiffs raised the issues of the "ICS logs on the city side, and documents/emails/notes regarding planning meetings on the county side" together, defense counsel referred back to her position that "the [documents] you asked me specifically for in May"—i.e., the ICS logs and scribe documents—"do not exist. . . . And any communications or notes you feel you were entitled to as part of discovery should have been addressed in a motion to compel." ECF No. 128-1 at 9. Therefore, Plaintiffs have failed to show that County Defendants lost or destroyed these documents.

Plaintiffs' request for Rule 37 sanctions related to County Defendants' emails, planning documents, and notes is accordingly **DENIED**.

### ii. Confidential Sheriff's Intelligence Report and Communication about the Report

Next, Plaintiffs argue the County Defendants violated Rule 26 by failing to identify a "Confidential Intelligence Report" (the "Report") created in preparation for the rally. Plaintiffs obtained this document from the City Defendants during discovery after noticing it was referenced in an email attachment produced by the City Defendants. ECF No. 128-1 at 11.

Plaintiffs describe the Report as a document that "specifically discusses racially profiling protestors, including but not limited to stating in the conclusion, 'There is also a

17

possibility that local Hispanic youths will also attend and may cause trouble.'" ECF No. 128-1 at 11. Plaintiffs argue that this excerpt from the Report "is consistent with" Plaintiffs' theory of the case that Defendants carried out a "plan . . . to push the mostly brown and black anti-Trump side of the 'free speech zone' all the way to Barrio Logan, while leaving the almost entirely white pro-Trump side on the west side of Fifth Avenue completely alone, to chant and jeer, 'build the wall!' and 'send them back to Mexico!' as Defendants were forcing the anti-Trump side out[.]" *Id.* Once again, Plaintiffs have not shown that this Confidential Sheriff's Intelligence Report is relevant to the County Defendants' defenses, only that the Report is relevant to Plaintiffs' claims. Plaintiffs do not explain how anything in the Report relates to the defenses County Defendants might raise or have raised. Instead, Plaintiffs point to the Report as evidence supporting their own claims that both City Defendants and County Defendants acted together in a "pre-planned action" to disperse and ultimately arrest only anti-Trump protesters, while permitting the pro-Trump demonstrators to continue their assembly. *See id.* at 2-3, 11. Whether a document might support the opposing party's claims is not the relevant standard for whether a document must be included in initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii); Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment.

Additionally, Plaintiffs acknowledge they obtained the document during discovery from City Defendants, and they further confirm in their Reply that County Defendants produced the Report in March 2019 as well, when Plaintiffs' counsel sought the report from Ms. Vilaseca despite discovery being closed. *See* ECF No. 128-1 at 11; ECF No. 135 at 5. Therefore, even if the Report should have been included in County Defendants' initial disclosures—which Plaintiffs have not shown—the County Defendants' duty to supplement under Rule 26(e) was not triggered since the City Defendants' initial disclosures made "the additional or corrective information" otherwise known to Plaintiffs during the discovery process. Fed. R. Civ. P. 26(e)(1)(A).

Therefore, Plaintiffs' request for Rule 37 sanctions based on the County Defendants' failure to include the Confidential Intelligence Report in their initial disclosures is **DENIED**.

### iii. Failure to Identify Captain Cinnamo in Initial Disclosures

Finally, Plaintiffs seek sanctions for the County Defendants' failure to name the top-ranking SDCSD official at the event, Captain Cinnamo, in their initial disclosures as an individual "likely to have discoverable information . . . that the disclosing party may use to supports it claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Captain Cinnamo is a Sheriff's Captain with the SDCSD who acted as the Sheriff's liaison to the SDPD during the rally. ECF No. 127-3, Cinnamo Decl. ¶¶ 1, 4. In that role, Captain Cinnamo was stationed at the Incident Command Post throughout the day of the rally, along with SDPD Command, supervisory staff, and other agency representatives. *Id.* ¶ 8. Plaintiffs did not learn of Captain Cinnamo's involvement with the rally until taking the deposition of Lieutenant Boudreau on June 20, 2018, five months before the close of discovery. *See* ECF Nos. 128-1 at 12; 134 at 8. Plaintiffs argue that the County Defendants directed them to take the deposition of Lieutenant Boudreau because he "could explain all the facts of the County's involvement[,]" but that the Boudreau deposition proved "unnecessary" because the only information in his testimony was the identity of Captain Cinnamo, whom Plaintiffs later named as a Defendant. ECF No. 128-1 at 6, 12. Plaintiffs thus seek Rule 37 sanctions against County Defendants for not disclosing Captain Cinnamo in their initial disclosures, forcing Plaintiffs to incur the purportedly unnecessary cost of first deposing Lieutenant Boudreau to learn his identity.[3]

---

[3] Plaintiffs' Motion is inconsistent as to precisely what sanctions they seek. Initially, Plaintiffs argue that County Defendants "should be required to pay for the unnecessary deposition of Lt. Boudreau as a cost the County improperly forced Plaintiffs to incur." ECF No. 128-1 at 6. In their Argument section, however, Plaintiffs request that County Defendants "be required to pay Plaintiffs' costs in deposing Captain Cinnamo." *Id.* at 12.

The Court finds that the County Defendants were not required to identify Captain Cinnamo in their initial disclosures under Rule 26(a)(1)(A)(i). The Court disagrees with the proposition that the initial disclosure requirements of the Federal Rules required disclosure of Captain Cinnamo at the outset. The wording of the Rule is clear, as is the Advisory Committee commentary. The Court acknowledges Plaintiffs' argument that County Defendants *did* rely on discoverable information from Captain Cinnamo by attaching his declaration to their Motion for Summary Judgment. However, the Cinnamo declaration attached to County Defendant's Motion for Summary Judgment (ECF No. 127-3) was not filed until September 20, 2019, long after Plaintiffs were aware of Captain Cinnamo's identity and more than a year after they had already deposed him. Therefore, although County Defendants did ultimately rely on Captain Cinnamo to support their defenses, County Defendants' duty to supplement their initial disclosures was extinguished the moment Plaintiffs learned of his identity during Lieutenant Boudreau's deposition. The failure to disclose him earlier would have only been sanctionable had Defendants failed to disclose him in response to discovery requests to which his identity was responsive.

Plaintiffs liken Defendants' failure to identify Captain Cinnamo to a prior discovery dispute involving Plaintiffs' failure to identify a certain witness, Dawn Miller, who attended the rally with Plaintiffs Nancy Sanchez and Jaime Cervantes Ramirez. The Court previously sanctioned Plaintiffs for failing to identify Ms. Miller as a witness in response to Defendants' Interrogatory asking Plaintiffs to identify all witnesses who could support their claims for pain or emotional distress. *See* ECF No. 79 at 9, 11-12, 16; ECF No. 98 at 10. Plaintiffs did not identify Ms. Miller in their response, and the Court ultimately sanctioned Plaintiffs by requiring them to pay for Ms. Miller's deposition.

The Court finds the issue regarding Captain Cinnamo distinguishable from the parties' discovery dispute regarding the nondisclosure of Ms. Miller. While Defendants did indeed raise the issue of Plaintiffs' failure to identify Ms. Miller in connection with their argument that Plaintiffs did not provide complete initial disclosures related to their claimed

damages, the Court ultimately upheld the Magistrate Judge's sanctions on that issue because Plaintiffs should have identified Ms. Miller in response to Defendants' Interrogatory No. 2. *See* ECF No. 98 at 10 (explaining that Plaintiff Sanchez's deposition testimony indicated that she and Ms. Miller "were together as law enforcement pushed both of them[,]" contrary to the Interrogatory response asking Plaintiff Sanchez to "[i]dentify all witnesses to support your claim that you suffered pain or emotional distress as a result of the conduct of the city."). Significantly, Defendants timely filed the motion related to Plaintiffs' failure to identify Ms. Miller in response to their Interrogatory No. 2 within 45 days after the dispute arose. Therefore, Plaintiffs' reliance on the prior order concerning Ms. Miller is misplaced.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Sanctions (ECF No. 128) is **DENIED without prejudice**.[4]

**IT IS SO ORDERED.**

Dated:  February 25, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge

---

[4] The denial is without prejudice because nothing in this Order should be construed as a ruling on the admissibility of any evidence at trial, which will ultimately be determined by the District Judge. For example, if Defendants attempt to introduce at trial any document or other evidence that was never disclosed to Plaintiffs, unless such use is solely for impeachment, the District Judge presiding over the trial may issue sanctions pursuant to Rule 37(e) by forbidding such use, even with respect to documents discussed in this Order.